DONNA M. BRANDIS, Plaintiff-Appellee and Cross-Appellant, *v*. DAVID J. BRANDIS, D.D.S., Defendant-Appellant and Cross-Appellee.

Fourth District    No. 14106

Opinion filed August 8, 1977.

CRAVEN, P. J., concurring in part and dissenting in part.

Thomas F. Londrigan, of Londrigan & Potter, P. C., of Springfield, for appellant.

Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, of Springfield (Robert S. Cohen and John R. Keith, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

This is an appeal from a divorce property settlement and alimony decree entered in Sangamon County. Plaintiff Donna Brandis commenced divorce proceedings against defendant David Brandis on November 12, 1975. They had been married since September 1962, and had no children. Following an uncontested bench trial, plaintiff was granted a divorce on extreme and repeated mental cruelty grounds. In a separate hearing on the property aspects of the divorce, the trial court awarded plaintiff $79,200 alimony in gross and $2,000 in attorney fees. The decree also allocated other assets in a manner not in dispute herein. Defendant filed a notice of appeal from the amount of the alimony and attorney fee awards. Plaintiff filed a notice of appeal from the amount of the alimony award.

Defendant contends that the award of alimony was improper or, alternatively, that an alimony in gross award was inappropriate in this case, and that the award of attorney fees was in error. Plaintiff counterappeals, contending that $108,000 would be a more appropriate alimony in gross award, or, alternatively, that the trial court's award should be sustained.

At the property settlement and alimony determination hearing commencing on May 18, 1976, it was established that defendant was 36 years old and plaintiff was 35 years old. Defendant testified that when he married plaintiff, a nurse, in 1962, he was 22 years old and in the aircraft business with his two brothers. In 1964 he decided to return to school. He attended college for six years and ultimately graduated from dental school in 1970. To help finance his education, defendant sold some of his assets, including an interest in an airplane. While in school, defendant's expenses were met by his occasional part-time work, by a partial dental school scholarship, by bank loans for tuition totaling $7,500, by stock investments, and by plaintiff who worked full-time as a nurse. In December 1970, defendant opened a dental office in Springfield, Illinois, and has remained there in the practice of dentistry. Plaintiff worked full-time as defendant's office secretary during his first half-year in Springfield.

In 1973, plaintiff and defendant purchased a 3½-acre wooded lot and, with substantial mortgage financing, built a home thereupon. The house was subsequently sold, and each party to the marriage received $13,000, representing one-half of the equity accumulated in the house. Since 1973, defendant has bought and sold interests in three aircrafts. He has also invested in an oil well, subsequently found to be dry, oil leases worth $1,500, and, through substantial financing, oil drilling equipment worth approximately $22,000. At the time of the alimony hearing, defendant had voluntarily assumed the parties' joint obligations totaling approximately $30,000, and he acknowledged his ability to pay reasonable support. He had also made tuition payments for his wife to attend college.

Plaintiff testified that, prior to defendant's return to school in 1964, they had agreed that if she would work and support defendant through school, he would take care of her financial needs and provide her a lifestyle commensurate with his professional status when he became a dentist and that she would not have to work thereafter. Plaintiff further testified that in 1973, at defendant's request, she returned to work as a nurse in order to make money. At the time of the alimony hearing, plaintiff was employed by the Illinois Office of Education and earned a gross salary of $1,440 a month. Plaintiff testified that during the last full year of the marriage, 1975, her expenses averaged around $3,300 a month and that her present needs remain at that level. She acknowledged receipt of $13,000, her half share in the equity in the house. From this sum she still has approximately $8,500, the rest having been spent on college tuition, living expenses and attorney fees.

The trial court explained the award of alimony in gross in these words:

> "* * * in view of the history of this marriage and considering the obvious intelligence, beauty and age and character of the Plaintiff,

> \* \* \* she should be awarded alimony in a substantial amount and payable in such a manner that she would not be penalized by a loss of any part of this alimony in the event of a remarriage by her even in the near future."

The trial court stated its desire to provide plaintiff with the same economic comfort and security as she enjoyed during her marriage to defendant. The trial court also noted defendant's status as a practicing dentist earning substantial income and well able to provide for the plaintiff's support. The trial court ordered defendant to pay alimony in gross in an amount of $79,200, payable at the rate of $600 a month for 11 years. In addition, the trial court ordered defendant to obtain life insurance to secure the alimony amount balance, to legally assume the joint debts of the marriage, and to pay $2,000 of plaintiff's legal expenses.

Defendant contends that the award of alimony in gross was improper under the circumstances. Plaintiff disagrees, contending that the alimony in gross award was appropriate, but, in addition, asks that the award be increased because of her equitable claim that she is entitled to a share of defendant's assets. This claim is premised on the alleged agreement made between the parties prior to defendant's return to college.

The granting alimony in gross pursuant to a divorce decree is provided for by sections 17 and 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, pars. 18, 19) and not by general equitable powers. (*Hall v. Hall* (1976), 43 Ill. App. 3d 97, 356 N.E.2d 1156; *Debrey v. Debrey* (1971), 132 Ill. App. 2d 1072, 270 N.E.2d 43.) Section 17 empowers a trial court to compel the transfer of property upon the requesting spouse's allegation and proof of an equitable interest or ownership in the property claimed. Section 18 provides in pertinent part:

> "When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, \* \* \* as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just \* \* \*. The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable." Ill. Rev. Stat. 1975, ch. 40, par. 19.

In *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792, our supreme court noted that the awarding of alimony is a matter reposing in the sound discretion of the trial court and that discretion will not be disturbed on review unless it amounts to an abuse of discretion or is contrary to the manifest weight of the evidence. In *Hall v. Hall* (1974), 18 Ill. App. 3d 583, 310 N.E.2d 186, *further appeal after remandment*, 43 Ill. App. 3d 97, 356 N.E.2d 1156, this court observed that the usual and

proper procedure is to award alimony in periodic payments so that the trial court can exercise a continuing supervision over the respective needs and abilities of the parties. The court then noted that alimony in gross would be appropriate in those circumstances where periodic payments would not be feasible as where a paying spouse does not pay his bills or will not work, or is regularly intoxicated and refuses to work, or where the paying spouse's occupation is so hazardous that he might not be able to continue to produce income. In *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661, the court found even further justifications for awarding alimony in gross including a paying spouse's irregular income, the speculative nature of the spouse's work, and severe bitterness of feeling between the parties arising especially in those circumstances where the parties own property jointly. Consequently, the overriding intent in awarding alimony in gross is to buoy the recipient spouse's financial security by minimizing the risks inherent in a periodic alimony award. See Neumark, *Property Rights in Divorce*, 62 Ill. B.J. 242 (1974).

■■ From a review of the record, we conclude that the provisions for alimony here should have been in periodic form. There is no sufficient indication that periodic payments would be inappropriate or undesirable. Reasonable inferences from the evidence establishes that defendant is a professional man who works hard and pays his bills. There is no showing that defendant is regularly intoxicated or that his occupation is so hazardous that his income is jeopardized or that his future income is speculative. Although there is some evidence of bitterness between the parties, it does not appear to be significant and, since there is no continued joint ownership of property, it can reasonably be expected to minimize. (See *Persico v. Persico* (1951), 409 Ill. 608, 100 N.E.2d 904.) Furthermore, plaintiff has already received $13,000 as her part of the equity in the house and defendant has made a good faith effort to assume the financial responsibilities of the failed marriage. He had accepted responsibility for the payment of the $30,000 even prior to the judicial proceedings.

Furthermore, the rationale of ordering defendant to pay $600 a month for the next 11 years for plaintiff's needs and support, recognizing that plaintiff earns $1,440 a month, escapes us entirely, particularly since defendant has assumed the substantial debts of the marriage. Plaintiff, however, has cross-appealed, seeking an even larger sum from defendant. She contends that since defendant allowed her to maintain an unlimited expense lifestyle during the marriage, and since defendant admitted his ability to provide the same, that she is entitled to the sum of $1,500 a month, an amount equal to the difference between her income and needs. In support of her contention, she inaccurately compares her net income to defendant's gross income. Defendant also relies upon the alleged agreement between the parties made prior to defendant's return to

school. She disregards the fact that defendant was substantially aided in obtaining his professional education by tuition loans which he has since repaid from his earnings and overlooks entirely other income in addition to that received from plaintiff. Consequently, we see little merit to plaintiff's argument.

The alimony in gross award, considering, as the trial court stated, plaintiff's intelligence, beauty, age and character, appears more punitive than need oriented. Under the award, plaintiff would have over $2,000 gross income a month to provide for her basic needs. We can only wonder at what plaintiff's needs are that would support a demand for an even greater sum than she received from the trial court.

In any event, the award of alimony must be "fit, reasonable and just" (Ill. Rev. Stat. 1975, ch. 40, par. 19) and an alimony in gross award must be equitable as between the parties. (*Green.*) In the instant case, the reason for alimony in gross, to buoy the recipient spouse's financial security by minimizing the risks inherent in periodic alimony awards, is not present. Consequently, we reverse the alimony in gross award and remand this cause to the trial court to currently determine the assets and earnings of the plaintiff and defendant, to award reasonable periodic payments of alimony according to plaintiff's needs and defendant's ability to pay, and to make all appropriate and necessary orders as may be determined by the trial court not inconsistent with this opinion.

Defendant next contends that the trial court erred in awarding attorney fees to the plaintiff.

■■ Section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16) authorizes the trial court to award necessary attorney fees to either side to defend or maintain the action for divorce in the trial court. The allowance for attorney fees in a divorce proceeding rests in the sound discretion of the trial court and will not be disturbed on appeal unless the discretion has been clearly abused. (See *Hall,* 43 Ill. App. 3d 97, 100, 356 N.E.2d 1156, 1159, and cases cited therein.) The allocation of the fee is to be guided by a consideration of the relative financial abilities of the parties, the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the attorneys, and the time and labor involved. (*Green.*) It is settled in Illinois that to receive an allowance for attorney fees, the petitioning party must show financial inability to pay and the ability of the other party to do so. This does not mean that the petitioner must be destitute but that the payment would strip the petitioner of the means of support and undermine his or her financial stability. *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.

■■ In the instant case, the questions of the plaintiff's needs and the defendant's ability to pay and their respective financial status were

presented to the trial court. The plaintiff introduced testimony that a reasonable fee for plaintiff's attorney would be $40 an hour for the associate and $50 an hour for the partner. A time sheet was introduced showing that 133 hours of the two attorneys' time was expended as of the June 10, 1976, hearing. Consequently, the $2,000 award was but a relatively small portion of plaintiff's total legal expenses. If no legal expenses award was made, the amount plaintiff would owe her attorneys could easily total over $5,000 and might even approach half her yearly salary or half the amount plaintiff received as her share of the equity in the marital home. This would put an undue strain on plaintiff's finances. In light of defendant's ability to absorb some of these legal costs and the nature of the case, we find that the trial court did not abuse its discretion in awarding plaintiff $2,000 in attorney fees.

Consequently, for the above stated reasons, we reverse the alimony in gross award and remand to the trial court for further proceedings not inconsistent with the views herein expressed. We affirm the trial court's award of attorney fees.

Affirmed in part, reversed in part, remanded with directions.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, concurring in part and dissenting in part:

I agree with that portion of the majority opinion insofar as it relates to the attorney fees. I am not in agreement that the award of alimony in gross should be set aside. It seems to me that the award of alimony in gross in this case, while debatable, was clearly within the realm of the authority of, and the discretion of, the trial court within the guidelines set forth in *Hall v. Hall* and *Kaufman v. Kaufman*. Accordingly, I would affirm the judgment of the trial court in all respects.