TERPIN, Respondent, v. DAUGHERTY, Appellant.

(220 N. W. 852.)

(File No. 6112. Opinion filed July 28, 1928.)

*O. D. Olmstead,* of Winner, and *E. O. Patterson,* of Dallas, for Appellant.

*C. E. Kell,* of White River, and *W. J. Hooper,* of Gregory, for Respondent.

BROWN, J. On July 10, 1918, plaintiff and defendant entered into a contract whereby, for a consideration of $10,000, plaintiff sold to defendant the north ½ of section 1, in township 42 north, range 27 west of the sixth principal meridian; east ½ of section 30, and southwest ¼ of section 32, in township 43 north, range 26 west of the sixth principal meridian, "together with all of the leases of state school land, government Indian land, and deeded land held and owned by the said parties of the first part in connection with and appurtenant to the aforementioned land, with all fences, wells, pumps, engines, tanks, and posts now lying on the ground, of which there are 1,000 more or less."

The purchase price was to be paid in the following manner: The seller was to get as large a loan from the Rural Credit Board

as he could, secured by first mortgage on the land, which mortgage was to be assumed and paid by the defendant, and the balance of the $10,000 was to be paid in cash by the defendant on or before October 1, 1918. The plaintiff procured a loan of $4,000, leaving $6,000 to be paid by defendant on or before October 1, 1918, and defendant took possession of the property under the contract. Defendant failed to make the payment, and plaintiff on January 24, 1921, commenced action for the foreclosure of defendant's interest in the contract, in which action, after alleging the contract and defendant's default thereunder, he set out as his second cause of action that defendant went into possession of the land about August 20, 1918; that the reasonable value of the use and occupancy of the land from that date to March 20, 1921, was $1,500; that the reasonable value of the use of leased land used in connection with the land sold was $1,000; that the defendant had taken and disposed of 1,000 fence posts, the reasonable value of which was $300; and plaintiff demanded that all of defendant's rights under the contract be foreclosed, that plaintiff be awarded the possession of the land, and that he recover judgment against defendant for the sum of $2,800, and for such other and further relief as might be equitable.

Defendant answered, admitting the execution of the contract and his taking possession of the property thereunder, and putting in issue all of the other allegations of the complaint, and further alleging as a counterclaim that he had sold certain cattle to the plaintiff, of which the sum of $500 on the purchase price remained unpaid, for which sum he demanded judgment against plaintiff.

The reply denied each and every allegation of this counterclaim, and on the issues thus raised the case was tried to the court, which made findings in substance that the contract described was entered into, and that under the terms thereof defendant went into possession of the land about the middle of August, 1918, and had been in possession ever since; that the plaintiff secured a loan for $4,000, and about the 1st of November, 1918, was paid $500 on the purchase price of the land through the sale of cattle, and the sum of $5,500, with interest from October 1, 1918, remained unpaid; and as a conclusion of law found that plaintiff was entitled to a decree of strict foreclosure. Pursuant to this decision judgment was entered that the contract was "foreclosed," and that—

"defendant, M. P. Daugherty, and all persons claiming under him, are hereby foreclosed and decreed to have no right, title, or interest in or claim to the said land by virtue of the said contract, and are forever enjoined and debarred from asserting any claim or right in or to the said land adverse to the plaintiffs herein by virtue of or on account of the said contract, unless the said defendant, M. P. Daugherty, pay or cause to be paid to the plaintiff the sum of $5,500, with interest thereon at the rate of 7 per cent per annum from October 1, 1918, within 40 days from the date hereof, July 11, 1921."

Nothing was paid by the defendant, and the judgment became absolute at the expiration of 40 days from its date. Some time thereafter—the exact date does not appear from the record—plaintiff commenced the present action against the defendant, setting up six separate causes of action growing out of the same contract: First, for $1,000, for the use and occupancy of the premises sold from October 1, 1920, until January 1, 1922; second, for $997.66, paid by plaintiff for rent of the leased land referred to in the contract, occupied by defendant from August 1, 1918, to January 1, 1922; third, for $500, on account of the 1,000 posts referred to in the contract, and for letting the fences on the premises get out of repair; fourth, for $270, value of three gasoline engines, three watering tanks, and two pumps included in the contract, which by defendant's negligence were destroyed; fifth, for $250, the value of a small house on the land when defendant went into possession, and which defendant sold, and which was removed from the land before foreclosure of the contract; and, sixth, for $300, damages for letting corrals and sheds get out of repair and manure accumulate in the barns while he had possession.

The answer admitted defendant's possession of the land described in the complaint, except 640 acres, of which he never was given possession, and generally denied all other allegations in the complaint, and pleaded the judgment hereinbefore referred to in the foreclosure suit as an adjudication of all of the matters set out in the complaint and a bar to the maintenance of this action.

On the trial the defendant introduced in evidence the judgment roll in the foreclosure action, objected to any evidence as to matters put in issue by the pleadings in that action, and at the close of plaintiff's evidence, and again at the close of all the evi-

dence, moved for a directed verdict on the ground that the undisputed evidence showed that all matters in issue had been fully adjudicated in the foreclosure suit, and on the further ground that there was no evidence upon which the jury could find any damages in favor of the plaintiff. The motion was denied, and thereupon the defendant by various motions asked the court to withdraw from the jury all questions relating to the payment of rentals on leased land, and the small house or shack alleged to have been sold by the defendant, stating specific grounds for the several motions, among which were that the foreclosure judgment was res judicata as to all these matters, and for the further reason that the testimony failed to show that plaintiff's security had been in any manner impaired or reduced thereby. Except as to rentals paid for Indian lands, the motions were denied, to which defendant duly excepted. On the settlement of instructions, the defendant likewise objected and excepted to the instructions of the court, for all of the reasons set out in these several motions.

The court instructed the jury, in substance, that plaintiff was entitled to recover such damage as he had shown by preponderance of the evidence that he had sustained on account of moneys he had paid out for leased land, except Indian land, during the period from August 1, 1918, until January 1, 1922; for use and occupation of the land sold, from August 20, 1921, to January 1, 1922; also for such of the 1,000 fence posts as the evidence showed defendant had burned for firewood, but not for posts used in keeping up the fences; also for the loss or injury to the three gasoline engines, three water tanks, and three pumps, and the value of the small house which had been sold.

The jury found a verdict in favor of the plaintiff, assessing his damages at $1,900, upon which judgment was entered, and from the judgment, and an order denying a new trial, defendant appeals.

■■■■ It would seem clear that plaintiff cannot have both the land and the purchase price. He cannot have the contract terminated or canceled to enable him to get back the land, and at the same time have it kept alive to enable him to get the purchase price, or any part of it. The purchase price was a lump sum of $10,000 for the whole of the property transferred. The contract was entire and indivisible. Waite v. Stanley, 88 Vt. 407, 92 A. 633, L. R. A. 1916C, 886.

■ The decree in an action for strict foreclosure "has the effect of setting aside the contract and placing the vendor in the same legal position as if the contract had not been made." State v. Darling, 39 S. D. 558, 165 N. W. 536. If the vendor is placed in the same legal position as if the contract had not been made, then he has no right of action for anything arising out of the contract. In 27 R. C. L. 603, it is said that a decree in the nature of strict foreclosure "has sometimes been called a decree for cancellation of the contract. Time is given, and, if it expires without the money being paid, the contract is canceled by the decree or judgment of the court, and the vendor becomes again the owner of the estate." In Waite v. Stanley, supra, the court says:

"Under the contract, the promise of the vendor to convey the property constituted the consideration for the vendor's promise to pay the purchase money, * * * and since, by the decree in the equity case, all interest of the vendee was foreclosed, by reason of which the contract was ended and the absolute title to the property reinstated in the vendor, there was no longer any consideration for the vendee's promise to pay the purchase price."

It follows, therefore, that all claims of plaintiff against defendant arising out of the contract were terminated when the decree of strict foreclosure became effective, which was 40 days after July 11, 1921; that is, on August 20, 1921. Among the claims thus terminated and for which plaintiff has no cause of action, are those for the use and occupancy of the premises at any time prior to August 20, 1921; for the value of the fence posts and run-down condition of the fences; those for the value of engines, water tanks, and pumps, and for the value of the shack or house on the land; and also the claim set up in the sixth cause of action for sheds out of repair and accumulation of manure.

■ By the terms of the contract, in addition to the 800 acres of land, plaintiff sold to defendant all leases of state school land, government Indian land, and deeded land held by plaintiff in connection with the 800 acres of which he was the owner. By this clause all of those leases, including the rent that had been paid under them up to the date of the contract, were transferred to the defendant, and no recovery can be had by plaintiff for any rent paid under the leases up to and including the date of the contract. But this transfer of the leases did not require the plaintiff to pay

rent accruing under the leases after the date of the contract. Whether any rent accrued after that time under these leases, which was not paid by defendant, cannot be determined on the record before this court, and whether defendant would be liable for use and occupation of the premises between August 20, 1921, and January 1, 1922, cannot be determined at this time. Plaintiff testified that defendant had some property on the place up to January 1, 1922, but Daugherty testifies that between the date of cancellation of his contract and January 1, 1922, plaintiff never asked him to turn over possession, and he never refused to do so.

The judgment and order denying a new trial are reversed.

BURCH, P. J., not sitting.

POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J., concurs in result.