Fred A. WOLKEN and Carol L.
Wolken, Plaintiffs and
Appellees,

v.

Paul C. BUNN, Defendant
and Appellant.

No. 15713.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1988.

Decided April 20, 1988.

Frank A. Bettman of Bettmann & Feehan, P.C., Rapid City, for plaintiffs and appellees.

Steven D. Rich of Wilson, Olson & Nash, P.C., Rapid City, for defendant and appellant.

HENDERSON, Justice.

## ACTION/PROCEDURAL HISTORY

Fred A. Wolken and Carol L. Wolken (Sellers) brought an action against Paul C. Bunn (Buyer) requesting foreclosure and a deficiency judgment for the remaining bal-ance due after Buyer refused to make further payments under a contract for deed. The trial court so ordered. Buyer made a motion for relief from the judgment, which was denied by the trial court. He now appeals both the trial court's judgment and the denial of his motion for relief, asserting trial court error in three regards: (1) A deficiency judgment was inappropriate; (2) Sellers should not have been awarded attorney fees; and (3) expert witness fees should not have been awarded.

As to Issues (1) and (2), we affirm the circuit court, but affirm in part and reverse in part regarding expert witness fees.

## FACTS

On June 17, 1983, Buyer, with background as an attorney in Montana handling land transactions, agreed to purchase the Sellers' ranch for $1,350,000.[1] The property consisted of 6,000 acres of ranch land, and an 80–acre homesite. As Buyer could not borrow enough to pay the full purchase price, he paid $1,150,000 in cash, and agreed to pay the remaining $200,000 on a contract covering the 80–acre homesite. This latter written contract mentioned only the 80–acre homesite, but an addendum specified that the contract was part of the larger transaction, with $126,500 allocated to the "residence," and the remaining balance allocated to land and other personalty. Neither side considered the 80–acre homesite to be worth the $200,000 due on the contract. Buyer verbally assuaged Sellers' concerns about being undersecured, by personally guaranteeing that he would pay the $200,000. He stated that he had a lot of money and property, and that the Sellers could seek a money judgment if he failed to make his payments.

The contract contained a default provision by which it was agreed that, in the event Buyer defaulted, the Sellers had the option to declare the deferred balance due, and could retake possession of the property, retaining all payments made by Buyer, or seek the balance due from Buyer person-

1. Per his testimony, he reflected that he was one of the largest buyers of agricultural land in South Dakota over a period of some five years.

ally. The property described, however, was only the 80–acre homesite.

Buyer defaulted in 1985 stating he had no intention of making further payments. Sellers, after proper notice and Buyer's failure to cure the default, declared the unpaid balance ($196,090) due and filed a complaint which alleged default and sought a money judgment. Buyer indicated that he had no money, but was willing to return the 80–acre homesite. Sellers changed course before trial, requesting strict foreclosure and a deficiency judgment for that amount remaining after Buyer's payments and the property's fair market value were deducted from the purchase price. A fair market value of $100,000 was established at the trial by expert testimony.

The trial court ordered foreclosure and a deficiency judgment. Sellers failed to serve Buyer with notice of an amended judgment, entered nunc pro tunc, spawning Buyer's later motion for relief of amended judgment. The motion was denied, and Buyer appealed. Neither party to this appeal treated the procedural nicety on the failure to serve but, rather, having mentioned it, proceeded to address the substantive aspect of the appeal by reciting three issues. These are mentioned above.

### DECISION

■ Buyer opposes the deficiency judgment by asserting that the default provision in the contract limited Sellers to a choice of either a money judgment or strict foreclosure, contending that deficiency judgments in conjunction with strict foreclosure on a land sale contract are not allowed by South Dakota law. It is argued that Sellers, by choosing foreclosure, could receive only their land back, as this fully compensated them under the contract. *See*

2. SDCL 44–8–23 provides:
    Nothing contained in § 44–8–20 or § 44–8–21 shall affect the liabilities of the parties to a contract for sale of real estate prior to the time such contract is merged into a mortgage note and mortgage, and judgment for foreclosure or for the amount due under said contract or any other customary judgment, may be rendered under such contract.

3. SDCL 44–8–20 provides:

*Terpin v. Daugherty*, 53 S.D. 341, 220 N.W. 852 (1928).

We begin by noting the widely accepted proposition, very recently announced by this Court, that a remedy reserved by contract does not deprive a party of other lawful remedies. *Middleton v. Klingler*, 410 N.W.2d 184, 186 (S.D.1987). " 'A contract which excludes some remedy given by law should be so definite and positive in its terms as to show the clear intention of the parties to do so.' " *Id.* (citation omitted). There are no words of exclusion in the default clause. In *Middleton*, we expressed: " 'Where ... there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords.' " 410 N.W.2d at 186 (citation omitted). We also note SDCL 21–50–2, which allows courts to *equitably adjust the rights of all parties in actions for foreclosure of real estate contracts*. C.D. Clark & C.E. Richards, *Installment Land Contracts in South Dakota, Part II*, 7 S.D. L.Rev. 44,68 (1962), roundly criticized past South Dakota case law regarding installment land contract remedies. Note, particularly, the very strong language at 63 thereof; however, said treatise at said page 63 does extoll the virtue of the right of a trial court "to equitably adjust the rights of all the parties ...," pursuant to SDC 1960 Supp. 37.3102 (now SDCL 21–50–2). This Court has, since the above article was written in 1962, applied SDCL 21–50–2 more broadly. *See Dow v. Noble*, 380 N.W.2d 359 (S.D.1986); *Booth v. Chamales*, 366 N.W.2d 843 (S.D. 1985). SDCL 44–8–23 [2] exempts executory real estate sales contracts from the statutory prohibition on deficiency judgments after mortgage foreclosures.[3]

> No claim for any deficiency in the amount secured by any real estate mortgage given after June 30, 1933, to secure all or any part of the purchase price of such real estate shall exist after the foreclosure of such mortgage by action or advertisement, but such foreclosure shall be a full satisfaction of such mortgage and no deficiency judgment shall thereafter exist or be rendered.

**420**

Due to the strong and compelling facts of this case, where Buyer personally guaranteed he would be liable for the full $200,-000, the homesite purchase was only part of a much larger sale to which part of the $200,000 contract price was allocated, and Buyer claimed to possess great legal experience the Sellers lacked, the traditional rationale recited in *Terpin,* 53 S.D. at 345, 220 N.W. at 854, for rejecting deficiency judgments does not apply.

The procedure used by the circuit court, allowing repossession by the Sellers and issuing a deficiency judgment for the contract price, less the value of the property and payments already made, was certainly irregular, inasmuch as deficiency judgments usually involve judicial sales. Our deficiency judgment statutes are written in reference to mortgages. SDCL §§ 21-47-15, -16, -17. However, these statutes were intended to prevent unjust enrichment by holders of mortgages. *Miners & Merchants Bank v. Braden Forestry,* 374 N.W.2d 123, 125 (S.D.1985). This purpose is not violated here, as there is no mortgage, and no unjust enrichment. Buyer agreed at trial that $100,000 was a fair valuation. The circuit court's decision was equitable, and within the authority granted under SDCL 21-50-2, "to equitably adjust the rights of all the parties...." We therefore affirm the trial court on this issue, but limit our holding to the facts of this case, not overruling *Terpin.*

■ Regarding the award of attorney fees in the amount of $2,000, we likewise affirm, noting the prayed-for amount was $3,506.50, deeming that there was no abuse of discretion. SDCL 15-17-7 requires that authority to tax costs must be based on clear legislative intent. *First Bank v. Haberer Dairy & Farm Equip.,* 412 N.W.2d 866, 874 (S.D.1987). That intent is evidenced in SDCL 21-50-4, which gives trial courts discretion to award reasonable attorney fees in foreclosures of real estate contracts. No abuse of discretion is evident.

■ We reverse, however, the award of expert witness fees to Sellers to the extent that they exceed the statutory limits set out in SDCL 19-5-1. *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525, 531 (S.D.1986); *Arcon Constr. Co. v. South Dakota Cement Plant,* 349 N.W.2d 407, 415-16 (S.D.1984). SDCL 19-5-1 provides, in pertinent part: "Every witness shall receive, for each day's attendance before any court, board, or tribunal in all civil and criminal cases, twenty dollars and for each mile actually traveled by the usual route of travel, each way twenty-one cents." The fee of an expert witness called by a party but not appointed by the court is paid by the party by whom he was called. SDCL 19-15-19. Specifically, we reverse the award of $728.00 for the fees of Sellers' appraiser, called as an expert witness, but affirm the award of such fees as fall within SDCL 19-5-1.

All the Justices concur.