**CHAMBERLAIN LIVESTOCK AUCTION, INC., and Robert J. Jorgenson, Appellees,**

v.

**Donald PENNER, Chamberlain Livestock Sales, Inc., and the Officers and Directors of Chamberlain Livestock Sales, Inc., Appellants.**

**No. 16906.**

Supreme Court of South Dakota.

Argued May 22, 1990.
Decided Oct. 17, 1990.

John Morgan and Don E. Petersen of Morgan, Theeler, Cogley & Padrnos, Mitchell, for appellees.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for appellants.

MEIERHENRY, Circuit Judge.

This case combines two lower court actions involving a contract to purchase the Chamberlain Livestock Auction (auction). Donald Penner (Penner), the purchaser, brought an action for rescission of the contract claiming misrepresentation; in the alternative, if the court found no misrepresentation, he contended that Robert Jorgensen's (Jorgensen), the seller's, damages were limited to those specified in the contract. Jorgensen claimed that Penner was in default, requested termination of the contract, demanded immediate possession and sought damages in excess of the contract provision. The trial court denied the claim for rescission, found no misrepresentation by Jorgensen and determined that Jorgensen was not limited to the damage provision in the contract.

The issues are (1) whether the trial court erroneously found that Jorgensen had not misrepresented certain information and (2)

whether the trial court should have limited Jorgensen's damages to those specified in the liquidated damage provision of the contract. We affirm the trial court's finding of no misrepresentation; we reverse its award of damages in excess of the contract provision.

## FACTS

On July 13, 1987, Jorgensen and Penner entered into an agreement for the auction's sale and purchase. The negotiations for the sale and purchase of the auction barn and business took place between Jorgensen, the principal shareholder and operating officer of the auction, and Penner, the principal shareholder and operating officer of Chamberlain Livestock Sales. The sale included real estate, inventory, equipment, fixtures, supplies and goodwill.

The terms of the agreement included a total purchase price of $320,000; $20,000 to be paid at the execution of the agreement; $60,000 on or before July 31, 1987; and the balance of $240,000 with interest at 9% per annum was to be paid in thirty equal semi-annual installments of $14,736 commencing on February 1, 1988. Penner made the payments of $20,000 upon executing the agreement and $60,000 on or before July 31, 1987. Penner failed to make the $14,736 semi-annual payment on February 1, 1988.

## MISREPRESENTATION

Penner sought rescission of the purchase agreement and return of the $80,000 down payment. Penner maintained that Jorgensen misrepresented the livestock figures to him, thereby inducing him to enter into the contract.

■ South Dakota law provides for rescission of a written contract when the consent of a contracting party was "given by mistake or obtained through duress, fraud, or undue influence...." SDCL 53–11–2. Fraud can be either actual or constructive.

Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;

(3) The suppression of that which is true by one having knowledge or belief of the fact;

(4) A promise made without any intention of performing it; or

(5) Any other act fitted to deceive.

Actual fraud is always a question of fact. SDCL 53–4–5.

■ Constructive fraud consists of "any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault ..., by misleading another to his prejudice...." SDCL 53–4–6. The existence of fraud is a question of fact for the fact finder. *Holmes v. Couturier*, 452 N.W.2d 135 (S.D.1990); *Tri–State Refining v. Apaloosa Company*, 431 N.W.2d 311, 314 (S.D.1988).

The facts show that the parties began discussions of the sale and purchase of the auction in 1984. Penner made a written offer to purchase the auction in June of 1986 for the sum of $320,000. Jorgensen did not accept the offer. Penner renewed his interest in the auction early in 1987 and after several months of negotiations an agreement was reached. Prior to finalizing the agreement, Penner requested and Jorgensen supplied information concerning the number of livestock sold, 1986 tax returns and 1985 annual financial reports.

Jorgensen sent Penner the livestock numbers for the years of 1984, 1985, and 1986. The numbers showed a decline for 1985 and 1986. At the top of the paper upon which the numbers were written, Jorgensen wrote in his own handwriting this note: "All numbers are being build (sic) up Fast. Cattle–Hog–Sheep Lots of Replacement (sic) are being Held."

At the bottom of the page he added, "Call me when you get this." He signed both notes, "Bob." Penner also requested the numbers for April, May and June of 1987 which showed the numbers had continued to decline.

At trial, Jorgensen said that he had provided Penner with the numbers for April, May and June of 1987; Penner maintained that Jorgensen did not provide the numbers but told him that the numbers were steady. Penner maintained he was misled by Jorgensen's representation that the cattle were being held in the country and building up fast and also by the characterization of 1987 numbers as "steady."

The trial court concluded that no misrepresentation occurred. It found (1) that Penner had presented himself to Jorgensen as a knowledgeable businessman in livestock business and auctions; (2) that Jorgensen had furnished all requested relevant business and financial information; (3) that Penner relied upon independent counseling and advice from his own lawyer and certified public accountant in entering into the Purchase Agreement; (4) that the handwritten note about numbers building up fast was not a misrepresentation and, in fact, was true; and (5) that Jorgensen's statement comparing 1985 and 1986 numbers as "steady" was a reference to the income of the auction, not livestock numbers. The court also found that Penner's testimony was "worthy of little or no credibility."

■ The trial court's findings of fact are presumed correct unless they are shown to be clearly erroneous.

This court may not substitute its judgment of factual questions for that of the trial court unless the findings of fact are clearly erroneous. *Northern Farm Supply, Inc. v. Sprecher*, 307 N.W.2d 870 (S.D.1981). In applying the "clearly erroneous" standard, we do not ask whether we would have made the same findings as did the trial court. Rather, the test is whether, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985); *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D. 1978); *In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). The findings of fact made by the trial court are presumptively correct. The burden to show error is on the appellant. *Temple, supra; Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964).

*Rosebud Sioux Tribe v. Strain*, 432 N.W.2d 259, 265 (S.D.1988).

After a review of the record, we find that Penner has not met his burden. We are not left with a definite and firm conviction that a mistake has been made.

■ Penner further argues that the representations were a "mistake" upon which the contract was based under SDCL 53–11–2(1) which justifies rescission. Since this issue was not raised at the trial court level, it will not be addressed at the appellate level. *Gulbranson v. Flandreau Township*, 458 N.W.2d 361 (S.D.1990); *Weaver v. Boortz*, 301 N.W.2d 673 (S.D.1981); *Ward v. Viborg School Dist. No. 60–5*, 319 N.W.2d 502, 505 (S.D.1982).

## DAMAGES

Penner claims that in the event he is in default, the damages should be limited to those specified in the agreement. The contract specified that if Penner breached the contract he would forfeit all payments and improvements and all rights, title and interest would be re-invested in Jorgensen. The terms of the contract defined the seller's rights in the event of default:

In the event Buyer shall fail to pay when due any of the payments herein provided, either principal or interest thereon, or to perform any of the covenants on its part to be performed, then all payments, together with interest, shall become immediately due and payable and this contract shall be forfeited and terminated at the option of the Seller, and in such event the Seller shall have the right to re-enter and re-take complete possession of all of said property, and the Buyer agrees to surrender and turn over the same promptly and

without delay. Such failure on the part of the Buyer to perform its obligations hereunder shall cancel all obligations of the Seller to be performed hereunder and fully re-invest Seller with all right, title and interest to be conveyed hereunder, and the Buyer shall forfeit all payments theretofore made, including all improvements, and such payments and improvements shall be retained by the Seller in full satisfaction and liquidation of all damages by it sustained.

The action which Jorgensen took upon Penner's failure to make the February 1, 1988, payment specifically invoked the contract provision to foreclose Penner's rights, title and interest to the business. Jorgensen served a notice of default on Penner on February 3, 1988. Jorgensen used the acceleration clause of the contract, declared the total amount of the contract due, demanded immediate possession of the business, and terminated the contract.

Jorgensen's notice of default dated February 3, 1988, read as follows:

As you know a payment of $14,736.00 was due February 1st, 1988, to the Chamberlain Livestock Auction, Inc. according to the terms of the purchase agreement entered into the 13th day of July, 1987, between yourself and the Chamberlain Livestock Auction, Inc. Because you have failed to make that payment, please treat this as notice of default under that agreement.

Under the terms of the agreement I hereby demand that the total amount of the contract including all principal and interest be immediately paid or that you forfeit and terminate the contract and return possession of all the property to Chamberlain Livestock Auction, Inc.

The total amount due under the contract is $240,000.00 in principal plus $10,800 in interest to February 1st, 1988 or a total of $250,800.00 plus $60.00 per day interest until paid in full.

You must make payment of all the principal and interest due on or before 60 days from this notice....

As was stated before, please treat this as a notice of default and demand for all principal and interest due under the contract,....

On March 18, 1988, Jorgensen filed a summons, complaint, and order to show cause for immediate delivery of the property, buildings and facilities of the auction business. Jorgensen alleged that Penner was in default under the purchase agreement and was wrongfully detaining the property. He sought "immediate possession of the property and business" and money damages. His complaint alleged:

That after the February 1st, 1988, default, the Plaintiff demanded the business which was conveyed to Penner under the purchase agreement be returned to the Plaintiff as required under the contract. The contract states if the Buyer failed to make any of the payments when due the Seller would have the right to re-enter and retake complete possession of all of the said property and the Buyer agrees to surrender and turn over said property promptly and without delay.

Penner operated the auction until the middle of March when he voluntarily vacated the premises. Jorgensen immediately took possession, found another buyer, and completed resale of the business by March 28, 1988.

At the hearing on the order to show cause for wrongful detainer March 29, 1988, Jorgensen informed the court that he was seeking default and immediate possession pursuant to his complaint. He also advised the court that Penner had delivered possession of the business, that Penner was claiming rescission of the contract, and that damages would need to be determined at trial. Penner was not present at the show cause hearing.

At trial, Jorgensen asserted he had the right to elect remedies and sue for the total amount of the contract. He contended that the contract gave him the right to accelerate the total amount due under the contract and to foreclose, but did not limit him to the damages specified in the contract. In effect, he invoked the contract clause regarding default and acceleration of pay-

ments but wished to avoid the liquidated damage provision.

The trial court found the clause was not exclusive and entered a judgment for the contract price, less the resale price, less the $80,000 payments made by Penner plus taxes, interest and consequential damages for a total amount of $131,113.90.

Jorgensen argues that *Middleton v. Klingler,* 410 N.W.2d 184 (S.D.1987) gave him the right to elect a remedy other than the one specified in the contract.[1] In *Middleton,* however, the seller did not invoke the default provision of the contract but sought, instead, specific performance.

> In construing the entire default provision we conclude it gives the sellers the right to possession, and buyers the concomitant obligation to deliver possession, *only if sellers elect to "deem this contract null and void."* This was simply a reservation of sellers' remedy of the right to possession should they *elect to cancel the contract, which in this case they chose not to do.* (emphasis added).

*Id.* at 186.

Although Jorgensen may have had a right to elect another remedy, he did not do so. His notice of default, his pleadings, his re-entry and resale relied upon the terms of the contract which reserved his right to foreclose Penner's rights, title and interest.

■ In a strict foreclosure action, the seller cannot retake the property and at the same time recover the purchase price. Strict foreclosure has the effect of cancelling the contract and all the buyer's rights, title and interest to the property.

It would seem clear that plaintiff cannot have both the land and the purchase price. He cannot have the contract terminated or canceled to enable him to get back the land, and at the same time have it kept alive to enable him to get the purchase price, or any part of it....

....

... If the vendor is placed in the same legal position as if the contract had not been made, then he has no right of action for anything arising out of the contract.

*Terpin v. Daugherty,* 53 S.D. 341, 345–346, 220 N.W. 852, 854 (S.D.1928)[2].

■ When a seller seeks foreclosure under a default clause in a purchase agreement, a liquidated damage provision may allow the seller to retain payments under the contract if the provision is a valid, enforceable provision and not an unlawful penalty. *Prentice v. Classen,* 355 N.W.2d 352, 356 (S.D.1984). "Whether a forfeiture provision in a sales contract is an enforceable, liquidated damage provision or an unenforceable penalty is a question of law for the court." *Safari, Inc. v. Verdoorn,* 446 N.W.2d 44, 46 (S.D.1989). In *Safari* a similar damage provision was found to be a penalty. In *Heikkila v. Carver,* 378 N.W.2d 214 (S.D.1985), the damage clause was upheld.

■ In *Prentice, Safari,* and *Heikkila* the buyer challenged the clause as an unenforceable penalty. The party against whom enforcement is sought has the burden of establishing that a liquidated damage provision is a penalty. *Safari, supra.* The court determines its enforceability by "consideration of the instrument as a whole, the situation of the parties, subject matter of the contract, circumstances sur-

---

1. In *Middleton* the contract contained a clause which stated that in the event of the buyer's default the seller could declare the contract cancelled and take immediate possession of the premises and retain all payments as liquidated damages and reasonable rental for the use of the property in default. The contract also gave the sellers the option to "use such other remedy or remedies as may be authorized by law." The sellers sought specific performance and had not elected the foreclosure remedy described in the contract.

2. In *Wolken v. Bunn,* 422 N.W.2d 417 (S.D.1988) the sellers were allowed strict foreclosure and a deficiency judgment. The holding was limited to the facts of the case and specifically did not overrule *Terpin.* In *Wolken,* the buyer had purchased a ranch for $1,350,000, made a down payment of $1,150,000, and agreed to pay the remaining $200,000 on a contract. The contract gave the seller the right to repossess but only mentioned an 80–acre homesite and was silent as to the 6,000 acres of ranch land. The buyer, an attorney, personally guaranteed the full amount and told the sellers they could seek a money judgment if he defaulted.

rounding its execution, and other factors." *Prentice*, 355 N.W.2d at 355.

■ Penner did not challenge the damage clause as a penalty; instead, he maintained that the contract clause applied if he were found in default. Jorgensen claimed that it did not apply because he had selected a different remedy with a different measure of damages. We find Jorgensen's argument without merit.

This case is also distinguishable from *Beitelspacher v. Winther*, 447 N.W.2d 347 (S.D.1989) and *Dow v. Noble*, 380 N.W.2d 359 (S.D.1986) where equitable adjustments were allowed to the buyer on a foreclosure action for a contract for deed of real estate. Neither party in the present case, requests equitable adjustment or claims unjust enrichment. *See, Heikkila, supra.*

We agree with the trial court's determination of the misrepresentation issue and reverse and hold as a matter of law that since Jorgensen elected to invoke the contractual remedy of the contract, the liquidated damage provision is valid and enforceable. Jorgensen is entitled to have all rights, title and interests in the business and retain all payments and improvements as damages.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur.

SABERS, J., concurs specially.

MEIERHENRY, Circuit Judge, for MORGAN, J., disqualified.

SABERS, Justice (concurring specially).

I write specially to point out that *Middleton* is distinguishable on its facts because the contract therein did not contain the key language: "in *full satisfaction* and liquidation of *all* damages by it sustained." (Emphasis added). In addition, as the majority points out, the *Middleton* contract contained a saving clause which permitted the sellers to "use such other remedy or remedies as may be authorized by law." No such saving clause existed in this case.

Therefore, I agree with the majority that in this case, the sellers retained the payments and improvements in full satisfaction and liquidation of *all* damages sustained.