HILDE, Respondent v. FLOOD, Appellant

(130 N.W.2d 100)

(File No. 10103. Opinion filed September 1, 1964)

**Mundt & Weisensee, Henry C. Mundt, George D. Weisensee,** Sioux Falls, for defendant and appellant.

**Davenport, Evans, Hurwitz & Smith, Lyle J. Wirt,** Sioux Falls, for plaintiff and respondent.

RENTTO, J. ██ These parties started operating together in the business of earth removal and the installation of sewer and water facilities about February 11, 1958 and continued to do so until March 31, 1961. This suit seeks an accounting of the activities of that association and its dissolution and the winding up of its affairs. That such relationship may be dissolved by a decree of court is not questioned. See Lunn v. Kaiser, 76 S.D. 52, 72 N.W.2d 312. The period in question covers seven separate jobs in which they were involved. Hilde contends that they carried on such activities as a joint venture and were to share all profits and losses equally. Flood admits that this was their arrangement on six of the jobs, but claims that on the Cheyenne River Agency project he was the contractor and Hilde was a subcontractor for a fixed compensation.

The trial court found that all of the work under review was done by the parties as a joint adventure doing business as Flood-Hilde Construction Company and that they were to share the profits and losses of the venture equally. The judgment, and the order amending it, so decreed and ordered the dissolution and winding up of the affairs of the company and appointed a receiver to carry out the provisions of the judgment. It further

determined that Flood owed the enterprise a substantial sum of money and ordered him to reimburse it in that amount. The parties were held to be equally liable for such debts of the company as remained after its liquidation.

On this appeal from the judgment Flood specifies 16 claims of error, but they present only two questions. First, did the evidence sustain the finding that the business of the Flood-Hilde Construction Company was operated as a joint venture on an equal basis on all projects; and second, did the court err in accepting the determination of Don W. Doherty, a certified public accountant, in the final accounting that he made of the affairs of the joint venture as to the relative obligations of the parties thereto?

In advancing his position as to the first question Flood makes this statement in his brief: "It is axiomatic that the burden of proof lies with the Plaintiff (Respondent) and that in civil cases the proof must be by a preponderance of the evidence. Now, let us examine the evidence and see if the Respondent has sustained his burden of proof." His view misconceives the function of this court in reviewing facts found by the trial court.

██ Whether a party having the burden of proof on an issue has sustained it is determined by the trial court. This process entails a weighing of the evidence which in turn is vitally dependent on the credibility of the witnesses. Not having seen nor heard them, we are ill prepared to make this determination. Consequently, when findings of fact are challenged on review we proceed from the premise that they are presumptively correct. In re Rowland's Estate, 70 S.D. 419, 18 N.W.2d 290. This places the burden of establishing incorrectness on the appellant.

██ It has long been the rule in this state that we may disturb the trial court's findings of fact only if it appears they are contrary to a clear preponderance of the evidence. See West's Dakota Digest, Vol. 2, Appeal and Error, 1010 to 1013. To do so we must be able to say as a matter of law that the facts are other than as found. Martindale v. Dickey, 72 S.D. 595, 38 N.W.2d 140. In reviewing them we are required to accept as true all

evidence favorable to the findings, except that which is so unreasonable as to challenge the credulity of the court. Libertin v. St. Paul Fire & Marine Ins. Co., 75 S.D. 238, 63 N.W.2d 248. Otherwise we would be usurping a function which of necessity is committed to the trial court. When he has found facts on evidence that is conflicting the burden on him who would undo them is heavy.

In the fall of 1957 S. E. Gustafson Construction Company learned that it was the low bidder on a construction job that the U. S. Government was undertaking at the Cheyenne River Indian Agency. Before this contract was formalized Gustafson approached the defendant, then operating as C. A. Flood Construction Company, about subletting a part of the project to him. Flood invited the plaintiff, then operating as George Hilde Construction Company, to undertake some of the work as his subcontractor. Hilde orally agreed to do this for about $9,811.80. His version was that this figure covered the "sewer ditching and the water ditching and hoisting in a small amount of concrete sewer pipe, storm sewer pipe." On or about November 15, 1957, they entered into a written agreement concerning such work. It is denominated a subcontract and is in evidence as Exhibit 2. On the face of it, this contract does not appear to conform with their prior oral understanding.

It recites that Flood "holds certain contract for excavation for sewer, storm sewer and water mains, installation of sewer, storm sewer and water mains and refilling of the excavations in regard thereto" on the Cheyenne project and that Hilde "agrees to perform such work under and for said contractor for the consideration hereinafter stated." It describes the work to be done in eight categories, the footage thereof and the compensation to be paid for each, totaling $32,279.70. Hilde agreed at his own expense to furnish the necessary equipment, manpower, tools and materials to do the job, but not pipe, hydrants and fittings. These were to be furnished by the principal contractor. Hilde was also required to furnish at his own expense a performance bond.

After the execution of Exhibit 2 Flood concluded that in order to secure the subcontract from Gustafson he and Hilde

would have to do the work as a joint venture. He so informed Hilde. While the reason for this is not clear it is inferable that he was unable to provide the required bond. Thereafter each man had prepared his individual financial statement for the purpose of getting a bond as a joint venture. They made application to several insurance agencies for such bond without success. Eventually they were successful. Both of them executed the application for it and on February 4, 1958, the Standard Surety Company of Rapid City issued them a bond. In this bond the principal was Claude A. Flood and George Hilde, a joint venture. Hilde paid the initial premium on it by his personal check, but was later reimbursed out of company funds. Hilde never furnished a bond to Flood as stipulated in Exhibit 2.

On February 11, 1958, Gustafson entered into a written subcontract agreement with Flood and Hilde. It designates Gustafson as the contractor and Claude A. Flood and George Hilde, a joint venture, as the subcontractor. In essence it provides that the joint venture would furnish the labor, equipment and materials necessary to perform and complete the work required of Gustafson under a described contract with the government on the Cheyenne Indian Agency project, except certain pipe, hydrants and fittings which the contractor was to furnish. It specified the work to be done as all trenching, installation and backfilling of sewers—$46,279.83, and the same for watermains—$30,808.75, and provided that any additions would be handled under supplementary agreement. Other provisions here significant were that the subcontractor would furnish the contractor with a bond in the amount of the contract; that the subcontractor would not assign the contract without the prior permission of the contractor. This agreement is in evidence as Exhibit 1.

Briefly stated, Flood's position is that Hilde was to receive for his work on the Cheyenne project the sum of $9,811.80 which was their original oral agreement. His answer indicates that this basic arrangement was confirmed in their subsequent written agreement, Exhibit 2, and not altered by the agreement they made with Gustafson, Exhibit 1. Hilde claims that their original oral understanding and their first written agreement were superseded by the arrangement described in Exhibit 1.

On the strength of their individual financial statements the parties on February 13, 1958, secured from the First National Bank of Sioux Falls a loan of $20,000. Their note evidencing this was signed "Flood and Hilde, by Claude A. Flood and George E. Hilde". With this they opened a checking account under the name of Flood-Hilde Construction Company. Both parties signed signature cards at the bank authorizing either of them to write checks on the account. They had checks printed bearing the name Flood-Hilde Construction Company. During the period involved both wrote checks on the account. Payments were made by the joint venture on this loan and additional advances were similarly secured from the bank as required to maintain the account.

They started on the Cheyenne project April 12, 1958, and the last work was done October 17, 1958. In the course of it they did extra work for which they were allowed $14,750.37 in addition to the contract price. Both parties furnished equipment for use on the project, apparently without any agreement as to what each would provide, and were present there doing work and supervising the employees. Hilde participated in all phases of the work. The employees were all carried on the payroll records as employees of Flood-Hilde Construction Company and paid by that company's checks as were the unemployment tax and the amounts withheld for income tax purposes. The Liability and Workmen's Compensation Insurance carried on their jobs was issued in the name of Claude A. Flood and George E. Hilde, doing business as Flood-Hilde Construction Company. All of their jobs appear to have been covered by a common policy. The premiums were paid by checks drawn on the company account. In getting this insurance all equipment was listed as belonging to the company and all employees listed as its employees.

Before and while the Cheyenne project was in progress, as well as after its completion, they undertook six other jobs. In these it was admitted that their association was a joint venture on an equal basis. Flood seems to have been in charge of such books as they kept. These consisted largely of bank statements, deposit slips, canceled checks, check stubs, payroll records and

invoices, but did not include a journal or a ledger. The records did not attempt to segregate these accounts as to separate jobs. Rather the items of income and expense of all of their activities, including the Cheyenne project, were intermingled. In fact they were so inadequate the accountant engaged by Hilde to audit their affairs was compelled to consult with both parties and others, to determine from what jobs certain items of their income were received and whether expenditures made were chargeable to work they were doing; and if so, on what job, or whether they were personal to the parties.

On the Cheyenne project, as well as their other jobs, the parties appear to have opened charge accounts in their individual names as well as in the name of the company, but these were all paid by checks drawn on the company checking account. Bills for repair on the equipment by each of them were similarly paid for as well as new equipment which they purchased. During the period in question, Flood, unknown to Hilde, wrote checks on the company account in the sum of $23,000 in payment of personal obligations. Hilde did not do so nor had he drawn any money from the business as income. To the contrary, he made advances to the company from his own funds on occasions of financial distress and made personal loans to Flood. Payments made by Gustafson for work done by the parties on the Cheyenne project were made to the Flood-Hilde Construction Company and deposited in the common account. This project was completed on October 17, 1958, but no effort was made to settle that account with Hilde before the commencement of this action in June 1961.

The court's finding that the association entered into by these parties on February 11, 1958, was a joint venture is, we think, well supported by the evidence. We have carefully reviewed this voluminous record and while there is evidentiary support for the defendant's position it does not warrant interference by us with the finding. In fact, the trial judge could justifiably disregard some of it as being unreasonable.

In connection with this the court also found that the parties were to share the profits and losses equally. This determination we think a proper one. Absent an agreement to the

contrary the law presumes they intended that each would share equally. 48 C.J.S. Joint Adventures § 11; 30 Am.Jur., Joint Adventures § 42. Flood made no effort to show that there was any percentage agreement to the contrary. Rather on this issue he confined himself to denying that their association on the Cheyenne project was a joint venture. On the other six projects in which they were joint adventurers he conceded they were to share equally.

Flood's remaining complaint involves Exhibits 5 and 34 prepared by Doherty, the accountant who audited the affairs of this association at the request of Hilde. They are in the nature of financial statements of Flood-Hilde Construction Company. Exhibit 5 covers the period from February 1, 1958 to March 3, 1961 and Exhibit 34 from February 1, 1958 to March 31, 1961. The latter exhibit was prepared at the court's suggestion after it had determined that the association was a joint venture. In the former exhibit many items had been placed in a suspense classification pending the determination of the nature of the enterprise and further conferences with the parties and their counsel. The latter purports to be a final accounting in which these items were reclassified.

In the preparation of Exhibit 5 the accountant, whose competency is nowhere questioned, spent over 300 hours in writing up and reconciling the records. This was in addition to the countless hours spent in conferences with the parties, and counsel, and other persons in preparation for the task. Similarly, additional time was spent in the preparation of Exhibit 34. Both of these exhibits were properly admitted in evidence under the provisions of SDC 1960 Supp. 36.1002, the Uniform Composite Reports as Evidence Act.

Flood's complaint on this point, as we understand it, does not go to the admissibility of the exhibits, but rather he questions the classification of some of the items in them and the omission of others. In other words, his quarrel is with their credibility. The accountant was extensively cross-examined as to all of these items. He certified that Exhibit 34 was prepared with due regard to standard accounting and auditing procedures and

noted that "The general condition for the company records makes it impossible for us to certify as to the accuracy of the classifications and the attached statements represent our best judgment based on the information submitted to us." The court adopted this accounting except that it did not allow any part of the accountant's fee to be charged to the company and allowed Flood an additional item of credit. It was for the court to accept such portions of the accounting as to him seemed proper. We are not persuaded that the court erred in the accounting it rendered.

Affirmed.

All the Judges concur.