DOROTHY J. SCOTT, Petitioner-Appellant, *v.* WILLIAM J. SCOTT, Respondent-Appellee.

First District (1st Division)   Nos. 78-65, 78-290 cons.

Opinion filed April 23, 1979.—Rehearing denied May 21, 1979.

Ward P. Fisher, of Chicago, for appellant.

Bentley, Du Canto, Silvestri & Doss, Ltd., of Chicago (Owen L. Doss, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Dorothy Scott Humphrey (petitioner) filed a petition against William J. Scott (respondent) to modify a judgment for dissolution of marriage entered September 8, 1970. Petitioner requested an increase in child support and other post-decretal relief. After considerable litigation, the trial court entered orders for an increase in child support payments of $75.00 per child per month; denial of petitioner's attorney's fees; refusal to

entertain petitioner's post-trial petition for rehearing; and amplification of the trial court's order of September 2, 1977, pertaining to the increase of child support.

On appeal, petitioner contends that the trial court erred in (1) finding that it lacked jurisdiction to entertain petitioner's post-trial petition for rehearing; (2) ordering a modification of the marital settlement agreement; (3) granting an insufficient increase in child support; (4) not ordering that the increase in child support be retroactive; (5) refusing to grant a hearing on petitioner's petition for attorney's fees and other relief and on respondent's motion for sanctions; and (6) denying petitioner attorney's fees and costs.

A property settlement agreement executed by the parties on September 3, 1970, was incorporated into the judgment for divorce. The agreement provided, among other things, that respondent would pay $1000 "per month *in solido*" to petitioner with the condition that if she remarried the payments would be reduced to $250 for each child as support only. Petitioner and respondent have two children, who in 1970 were 10 and 7 years old.

In her petition to modify the judgment, filed February 6, 1976, petitioner requested that the court order respondent to pay such additional support as the court deemed just. Respondent filed his answer to the petition. On July 19 and 20, 1977, the trial court conducted a hearing during which both petitioner and respondent testified concerning their then current economic status.

At the time of dissolution of the marriage, respondent, as the Attorney General for the State of Illinois, received a salary income of $31,800. His adjusted gross income was $33,122 and his net income after taxes was $27,386.66. His combined alimony and child support payments totaled $12,000 per year. These payments were reduced to $6000 per year upon the remarriage of petitioner on August 2, 1975. Respondent remarried in 1974. In 1976 respondent received salary of $42,500 as Attorney General. His adjusted gross income was $45,845 and his net income after taxes was $33,221.

Respondent maintained two residences. One in Springfield was paid for by the State of Illinois. He paid rent of $877 per month for the other in Chicago. Respondent maintained $52,000 of life insurance with the children as beneficiaries as required by the original ·judgment. Respondent's income-producing assets included: a certificate of bank deposit for $1500; a corporate bond for $5000; United States government securities of $15,000 and a loan to his present wife of $7000. Respondent also had $38,000 in the mandatory State Pension Fund which produced no income.

Respondent spent the following each month for personal living

expenses for himself and his present wife: $877 rent; $88 for cleaning and laundry; $45 for telephone; and $89 for electricity. After deductions for withholding and child support, respondent stated that he had a net of $1.54 per month. On July 15, 1974, respondent had investments in savings of $59,500 and on July 19, 1977, the amount had diminished to $28,500.

Petitioner testified that in 1970 she was employed as the manager of Holiday Travel House, Inc., and received a salary of $7200 per year. In 1976 her gross income from this source was $8720.40. She became the sole shareholder of that corporation in 1974 when respondent remarried. In addition, in 1976, petitioner received $5400.60 from interest and $302.40 from dividend payments on stock.

Petitioner further testified that the marital residence had been awarded to her by the judgment. She sold the property and used the proceeds to purchase a condominium. She and the children lived there until she remarried in 1975. She then sold the condominium and invested the proceeds in savings accounts. The judgment also awarded petitioner a $10,000 certificate of deposit and 36 shares of stock valued at $75 per share.

At the time of the hearing, petitioner had $33,340.37 in a savings account, four $10,000 certificates of deposit, and another savings account that earned $375.38 in interest in 1976.

Petitioner further testified that in accordance with her present standard of living approximately $800 per month is expended for the benefit of each child. This figure was arrived at by estimating the total expenses of the family and dividing by four. For example, petitioner estimated that the apartment in which her family presently lives would rent for $650 per month, although she does not actually pay rent. Her present husband owns the three-flat building in which she and the children live. She divided $650 into four parts to obtain a cost of housing of $163 per month per child. Utilities, cleaning supplies and the cost of using the automobile were similarly computed. Petitioner also included the cost of replacing dishwashers and washing machines at $600 per year. Using that figure, she estimated that the replacement cost was $13 per month for each child. Petitioner further estimated that it would cost about $900 to take a 2-week vacation in Florida similar to the vacations that the children took with petitioner and respondent during their marriage. The standard of living to which the children had become accustomed before dissolution of the marriage is approximately equivalent to what they presently enjoy.

On September 2, 1977, the trial court filed its memorandum opinion and entered an order for an increase in child support of $75 per month per child and for each party to pay his own attorney's fees. On September 21, 1977, respondent filed a motion to amplify the above order. On

September 30, 1977, a petition for rehearing and other relief was filed by petitioner. She requested further hearings with regard to an additional increase in child support and that respondent be required to pay petitioner's attorney's fees. On October 3, 1977, before the petition for rehearing was heard, petitioner filed a notice of appeal praying that the order of September 2, 1977, be reversed "insofar as it denies an increase of child support in excess of $75.00 per month per child, denies retroactivity of any increase in child support and denies attorney's fees and costs incurred on behalf of Plaintiff-Appellant."

On October 12, 1977, the trial court entered its order pertaining to respondent's motion to amplify. This order incorporated therein the previous order of September 2, 1977, but augmented it in accordance with the property settlement agreement.

On October 14, 1977, the respondent filed a motion to strike and dismiss petitioner's petition for a rehearing and for imposition of sanctions on petitioner and her attorney and a supplemental motion for issuance of a rule to show cause and for imposition of appropriate sanctions upon petitioner's counsel.

On October 17, 1977, petitioner filed a petition for a rule to show cause why respondent should not be held in contempt for failing to pay child support and expenses in the amount of $1274.15. She also requested reasonable attorney's fees incurred as a result of filing the petition. On October 19, 1977, respondent filed his answer to this petition stating that the alleged arrearage had already been forwarded to petitioner. On October 19, 1977, the trial court entered an order denying petitioner's petition for a rule to show cause and referring the request for attorney's fees to the trial judge who had heard the original post-judgment petition. On October 21, 1977, petitioner filed her motion to strike the respondent's motion for sanctions which was granted on October 24, 1977. On October 26, 1977, petitioner filed a petition for attorney's fees in connection with her attorney's preparation of the petition for a rule to show cause. Respondent filed an answer praying that the petition be denied. On December 15, 1977, the trial court entered its order striking petitioner's petition for rehearing and the motion for sanctions because the matter was on appeal and the trial court lacked jurisdiction, and denying the petition for attorney's fees, "without evidence and over the objection of counsel" for petitioner. On January 6, 1978, petitioner filed a notice of appeal from the order entered December 15 and again stated she was appealing from the orders of September 2 and October 11. Although the parties refer to the order entered October 12 as entered October 11, the record indicates that the order was actually entered on October 12, 1977. We will refer to it as the October 12 order.

A review of this rather extensive record is required for a complete understanding of the contentions of the parties which we will now consider.

## I.

Petitioner first contends that the trial court erred in striking her petition for a rehearing in its December 15, 1977, order. The trial court held that it lacked jurisdiction to entertain the petition since the "matter was on appeal." Petitioner maintains that although she filed a notice of appeal on October 3, 1977, directed only to the order of September 2, 1977, respondent's motions to amplify the judgment of September 2, 1977, as well as the petition for rehearing remained pending in the trial court. Therefore, she contends the September 2 judgment was not final, and the trial court retained jurisdiction over this judgment until it had passed upon the last post-trial motion. Petitioner further argues that the second notice of appeal filed November 10, 1977, pertained strictly to the order entered October 12, and that the trial court continued to exercise jurisdiction over all pending matters until its final order of December 15. Respondent maintains that the petitioner abandoned her petition for rehearing by filing a notice of appeal before she obtained a decision on her petition. Therefore, respondent contends the December 15 order was proper.

■■ A post-trial motion attacking a judgment may be held abandoned by the subsequent filing of a notice of appeal. As this court stated in *Richey Mfg. Co. v. Mercantile National Bank* (1976), 40 Ill. App. 3d 923, 925-26, 353 N.E.2d 123, quoting *Corwin v. Rheims* (1945), 390 Ill. 205, 216, 61 N.E.2d 40:

> "If a party who has an appealable interest in a judgment or decree files a motion to vacate such judgment or decree, he may thereafter abandon the motion by withdrawing it or if he files a notice of appeal, such filing will constitute an abandonment of the motion."

Thus we hold that petitioner abandoned her petition for rehearing of the order of September 2, 1977, when she filed her notice of appeal from that order on October 3, 1977, without disposition of the petition. See also *Smith v. Glowacki* (1970), 122 Ill. App. 2d 336, 340, 258 N.E.2d 591; *Vogel v. Melish* (1962), 37 Ill. App. 2d 471, 473, 185 N.E.2d 724.

■ Petitioner further maintains that the notice of appeal was itself a nullity since the trial court had the respondent's motion to amplify before it when the notice of appeal was filed. Even assuming this contention to be correct, the petitioner again abandoned her petition for rehearing upon filing her notice of appeal on November 10, 1977, directed against the October 12, 1977, order which clarified and incorporated the

September 2, 1977, order. When petitioner filed her notice of appeal on November 10, she divested the trial court of jurisdiction over the subject matter contained in that order and the trial court could no longer entertain her petition for rehearing. (See *In re Estate of Lucas* (1978), 71 Ill. 2d 277, 281, 375 N.E.2d 112, and *Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 293, 325 N.E.2d 76.) Consequently, the trial court properly granted respondent's motion to strike petitioner's petition for rehearing.

## II.

Petitioner next contends that the trial court erred in modifying the 1970 marital settlement agreement in its October 12, 1977, order. She maintains that the order changed the 1970 agreement to provide that respondent's obligation for child support would terminate if a child attended college and resided away from home, and also to provide that respondent would have the right to claim both children as dependents for income tax purposes.

Paragraph 8 (b) (vi) of the marital settlement agreement provided:

"8. Upon the remarriage of the wife, husband agrees to pay the wife, for the support, education and maintenance of the minor children of the parties hereto, the sum of Three Thousand ($3,000) Dollars per year per child, as provided for in paragraph 3(c) above, such payments shall be subject to the following conditions:

\* \* \*

(vi) \* \* \* (A) If the child at any time no longer resides with the Wife, payments under this paragraph for such child shall cease, and if such child is still a minor or has not completed his or her education, the primary responsibility for support, maintenance and education will thereafter be borne by the Husband; and (B) any payments under this paragraph 8 relating to the graduate school education of a child shall be made directly by Husband for the graduate school education of such child."

Paragraph 8(e) of the marital settlement agreement provided:

"\* \* \* Wife agrees that Husband shall be entitled to any deduction allowable under Section 151 of the Internal Revenue Code of 1954 as amended for each of the children in any calendar year in which Wife has custody of such child under the terms of this Agreement \* \* \*."

Section 151 of the Internal Revenue Code contains the provision governing income tax exemptions for minor dependents. A reading of these portions of the 1970 agreement indicates that the trial court's order of October 12, 1977, merely reiterated what was already stated in the agreement incorporated in the judgment for dissolution of the marriage. Petitioner's contention in this regard lacks merit.

### III.

■■■ Petitioner further contends that the trial court erred in granting an insufficient increase in child support. "Modifications of child support payments rest within the sound discretion of the trial court" (*Addington v. Addington* (1977), 48 Ill. App. 3d 859, 863, 363 N.E.2d 151), and such modifications will not be disturbed on review absent an abuse of discretion (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 1000, 367 N.E.2d 512, *appeal denied* (1977), 66 Ill. 2d 642). An increase in child support payments is justified only when the evidence establishes that the needs of the children and the earnings of the respondent have increased. (*Nordstrom v. Nordstrom* (1976), 36 Ill. App. 3d 181, 184, 343 N.E.2d 640.) "The burden of proof is on the petitioner to clearly show the increased need and increased ability to pay." (*Addington*, 48 Ill. App. 3d 859, 863.) Where respondent's increased ability to pay is demonstrated, one proper basis for establishing the increased need is that since the entry of the original support order, the children have grown older and the cost of living has risen. *Addington*, 48 Ill. App. 3d 859, 863.

Respondent's testimony indicated that he had received approximately a 40-percent increase in salary from the time of the original support order. His children had grown from ages 10 and 7 to 17 and 14. The trial court took judicial notice of the increase in the cost of living, but there was no specific evidence to that effect.

■■ Petitioner testified that approximately $800 was expended per month per child. She arrived at this amount by use of a method expressly disapproved by this court in *Addington*. Therein we stated that each item of expense should be computed on the basis of what the children actually require and consume and not by dividing the total cost of the household by a constant number representing the child's estimated share. (*Addington*, 48 Ill. App. 3d 859, 864.) The expenses attributed to the children by petitioner were not supported by cancelled checks or receipts. In some cases, such as $650 per month for rent and $900 for a Florida vacation, the money had not actually been expended. Thus, in its memorandum opinion of September 2, 1977, the trial court concluded that some of the costs to which petitioner testified were excessive. The trial court, however, did order that child support payments be increased from $250 per child per month to $325 per child per month. This is a 30-percent increase. Under the circumstances and facts presented by the record, we cannot say that the trial court abused its discretion by awarding an increase of $75 per child per month.

### IV.

■■ Petitioner next maintains that the trial court erred in not ordering the increase in child support to be retroactive to the date on which the

petition was filed. The September 2, 1977, order makes no mention of retroactivity. The petition for modification did not request that any increase be retroactive. Petitioner first requested this relief in the petition for rehearing filed September 30, 1977, which, as previously shown, was abandoned. Therefore, this issue, never having been raised in or passed upon by the trial court, is not properly before this court. (See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *Anderson v. Rick's Restaurant & Cocktail Lounge* (1977), 45 Ill. App. 3d 992, 995, 360 N.E.2d 465; *Smith v. Glowacki* (1970), 122 Ill. App. 2d 336, 340, 258 N.E.2d 591.) We conclude that the increase in child support should be deemed effective from September 2, 1977, the date of the order which awarded it.

### V.

■■ Petitioner next contends that the trial court erred in refusing to grant a hearing on respondent's supplemental motion for sanctions against petitioner's counsel filed October 14, 1977. Petitioner filed a motion to strike respondent's motion on October 21, 1977. The trial court granted petitioner's motion on October 24, 1977, and respondent's motion was thereby stricken. Petitioner maintains that she requested a hearing on said motion in her motion to set pending matters for hearing filed November 17, 1977. After careful study of petitioner's motion, we fail to see therein any express request for a hearing on respondent's motion for sanctions. Even if there were such a request, the trial court had previously disposed of the matter. Having successfully moved to strike the respondent's motion, petitioner should not now complain that she did not receive a hearing on it. "[A]n issue not presented to or considered by the trial court cannot be raised for the first time on review." (*Kravis*, 60 Ill. 2d 141, 147.) We will add that the motion for sanctions against the petitioner's attorney contains matters not germane to this appeal or to the litigation here involved. These issues were not properly before the trial court or this court.

### VI.

Petitioner's next contention is that the trial court erred in refusing to grant a hearing on her petition for attorney's fees in connection with the order entered September 2, 1977, and in denying her attorney's fees and costs in said order. Petitioner's petition for modification filed February 6, 1976, did not contain a request for attorney's fees and costs. At the end of the hearing held July 20, 1977, petitioner's counsel asked the trial court if they could reserve the question of fees for submission of a petition. The trial court stated that counsel could present a petition on that subject. No such petition was presented prior to the trial court's order of September 2, 1977, which directed that each party should pay his or her own attorney's

fees. The memorandum opinion filed that same day stated that the record showed petitioner had total current assets of $111,446.53 and a gross annual income of $14,442.80, and it appeared to the trial court that under the circumstances, it would be error to award attorney's fees to either party in connection with the hearings held on July 19 and 20, 1977. Thereafter, petitioner filed a petition for rehearing in which she requested attorney's fees. As above shown, that petition was later abandoned.

■■ Attorney's fees may be awarded in proceedings to modify child support payments. (*Robin v. Robin* (1977), 45 Ill. App. 3d 365, 372, 359 N.E.2d 809.) The allowance of fees rests in the sound discretion of the trial court, and the exercise of that discretion will not be interfered with unless it is clearly abused. (*Canady v. Canady* (1964), 30 Ill. 2d 440, 446, 197 N.E.2d 42.) Also, the allowance of attorney's fees depends upon the unique characteristics of each case. (*Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 886, 288 N.E.2d 884.) To justify the allowance of attorney's fees, the party seeking such relief must show financial inability to pay, and the ability of the other spouse to do so. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1050, 318 N.E.2d 282.) "This does not mean that the petitioner must be destitute but that the payment would strip the petitioner of the means of support and undermine his or her financial stability." (*Brandis v. Brandis* (1977), 51 Ill. App. 3d 467, 472, 367 N.E.2d 162.) However, as stated by this court in *Rattray v. Rattray* (1976), 43 Ill. App. 3d 853, 856, 357 N.E.2d 701:

> "The court need not make specific findings of fact with respect to the party's financial ability in order to grant an award for attorney fees. [Citations.] Neither is it necessary for the court to conduct a special hearing on the question of the party's ability to pay attorney fees when, as here, no such hearing was requested."

When the order of September 2, 1977, was entered, the trial court had before it evidence of the financial status of both parties. No hearing was requested by either party. Therefore, it was not error for the trial court not to conduct a hearing at that time on the propriety of an award of attorney's fees. *Canady*, 30 Ill. 2d 440, 446; *Moore v. Moore* (1977), 53 Ill. App. 3d 228, 233, 368 N.E.2d 545; *Kaufman*, 22 Ill. App. 3d 1045, 1051.

■■ According to the financial circumstances revealed by the record, petitioner had sufficient resources from which to pay her attorney, and there is no indication that such payment would strip the petitioner of her means of support or undermine her financial stability. (See *Brandis*, 51 Ill. App. 3d 467, 472.) Therefore, we cannot say that the trial court clearly abused its discretion in its September 2, 1977, order by requiring each party to pay his own attorney's fees.

## VII.

We now consider petitioner's contention that the trial court erred by

refusing to grant her a hearing for attorney's fees incurred in connection with the filing of a rule to show cause. On October 17, 1977, petitioner filed a petition which alleged that respondent was in arrears $1274.15 for child support. The petition prayed that (1) a rule to show cause issue against respondent and (2) that respondent be ordered to pay reasonable attorney's fees in connection with the petition. On October 19, 1977, the rule to show cause was denied based on the fact that respondent had paid the arrearage in child support on the same day that the petition was filed. The request for attorney's fees was referred to the trial judge who had heard the original petition for modification of the judgment.

On October 26, 1977, petitioner filed a petition for attorney's fees pursuant to the order of October 19, 1977. Thereafter on November 17, 1977, petitioner requested a hearing on these applications for attorney's fees. On December 15, 1977, the trial court denied petitioner's requests "without evidence and over the objections of counsel."

Initially we note that this request for attorney's fees occurred in a situation substantially different from the request previously discussed with reference to the order of September 2, 1977. Here petitioner believed that it was necessary to resort to judicial proceedings to enforce the judgment order of September 8, 1970, and the modification order of September 2, 1977. In determining the propriety of the allowance of attorney's fees, the trial court should consider the circumstances which necessitated the commencement of judicial proceedings. (*Kuhns*, 7 Ill. App. 3d 884, 886.) Where it is necessary for a petitioner to retain an attorney for the purpose of enforcing an order of the court, she is entitled to reasonable attorney's fees (*Gaines v. Gaines* (1969), 106 Ill. App. 2d 9, 15, 245 N.E.2d 574, and cases cited therein), provided the financial requirements above described are met. Additionally, where the allowance of attorney's fees is contested and a hearing is requested, the trial court should conduct a hearing on the question. *Sahs v. Sahs* (1977), 48 Ill. App. 3d 610, 613, 363 N.E.2d 156.

■■ In the instant case, petitioner requested attorney's fees. Respondent denied the propriety of such an award. Petitioner requested a hearing on her petition. Therefore, the trial court should have conducted a hearing on the issue of propriety of allowing attorney's fees. This cause will accordingly be remanded to the trial court for a full hearing on this issue.

Accordingly, all orders appealed from are affirmed except that the order denying a hearing on petitioner's request for attorney's fees, in connection with the rule to show cause sought by petitioner, is reversed, and the cause is remanded for a full hearing on that issue.

Judgment affirmed in part, reversed and remanded in part.

McGLOON and O'CONNOR, JJ., concur.