**Jan Marie OLSON, Plaintiff and Appellant,**

v.

**Mark Allen OLSON, Defendant and Appellee.**

**Nos. 16129, 16132.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1988.

Decided April 5, 1989.

Catherine M. McNamara, Sioux Falls, for plaintiff and appellant; James A. Eirinberg of Anderson, Carlsen, Carter, Hoy & Eirenberg, Sioux Falls, on the brief.

Sean M. O'Brien of Erickson & Helsper, Brookings, for defendant and appellee.

MORGAN, Justice. ·

Jan Marie Olson (Jan) appeals from an order modifying judgment and decree of divorce wherein the custody of Nathan Allen Olson (Nathan), age 11, was changed by granting Mark Allen Olson (Mark) full legal and physical custody of the minor child. We affirm in part, reverse in part and remand in part.

On May 20, 1977, Jan and Mark Olson were married in Sioux Falls, South Dakota. They had one child, Nathan, born on June 9, 1977. Jan and Mark subsequently divorced and judgment and decree of divorce were entered and filed on December 10, 1980. The judgment and decree of divorce approved and incorporated a stipulation and agreement executed by Jan and Mark which provided that Jan was to have sole care, custody and control of Nathan. The stipulation also provided that Mark was to pay child support in the amount of $100 per month until Nathan attained majority.

Subsequent to their divorce, Jan remarried and had two more children, now ages six and seven. Jan is currently separated from her second husband and has commenced divorce proceedings. Nathan and his younger half-siblings have continuously resided with Jan.

In the spring of 1987, Mark filed an action for change of custody. Hearing was originally scheduled for June 16, 1987. On June 16, upon motion, the trial court granted Jan's motion for continuance, rescheduling the hearing. Mark's motion that the trial court assess reasonable terms was denied. Hearing was held on August 21, 1987, after which the trial court issued a memorandum opinion and entered findings of fact and conclusions of law granting Mark's motion to change custody. Upon Jan's motion, the trial court allowed the matter to be reopened. On November 25, 1987, a second hearing was conducted. Subsequent to the second hearing, the trial court entered its permanent order modifying judgment and decree of divorce affirming its prior decision to change custody.

On appeal, Jan contends that the trial court abused its discretion by (1) holding that Mark sustained his burden of showing that the best interests and welfare of the child require a change of custody, (2) not following the child's preference to remain with his mother, and (3) separating the child from his siblings without compelling reasons.

By notice of review, Mark contends that the trial court abused its discretion by (1) awarding Jan attorney fees, (2) increasing child support and making said increase retroactive, and (3) failing to award Mark terms for having to continue the child custody proceedings.

We first define our standard of review before we address the specific issues raised by this appeal. When an original decree of divorce is based upon an agreement or stipulation between the parents, such as here, the parent seeking modification of a child's custody has the burden of proving by a preponderance of the evi-

dence that the best interests and welfare of the child require a change of custody. *Mayer v. Mayer,* 397 N.W.2d 638 (S.D. 1986); *Flint v. Flint,* 334 N.W.2d 680 (S.D. 1983); *Kolb v. Kolb,* 324 N.W.2d 279 (S.D. 1982). The trial court has broad discretion in determining which parent should be given custody of a child. However, that exercise of discretion must have a sound and substantial basis in the testimony. *Williams v. Williams,* 425 N.W.2d 390 (S.D.1988). The trial court's decision will be reversed only for a clear abuse of discretion. *Mayer, supra* at 640, *Flint, supra* at 682, *Kolb, supra* at 283.

Jan argues that Mark has failed to prove that the best interests and welfare of Nathan "require" or "necessitate" a change in custody and asks this court to further amplify the burden which *Mayer, Flint* and *Kolb* place upon the moving parent. Jan advocates we adopt a three-part test to assist trial courts in determining whether or not the noncustodial parent, who moves to change custody, has proved that a change of custody is "required." She argues that the moving parent first show that the current custodial conditions are in some way harmful to the child's best interests. Secondly, the moving parent must prove that the living conditions he has to offer the child will rectify the conditions in the current custodial home that are harmful to the child's best interests. Lastly, the moving parent must show that the advantage of the change to the child outweighs the harm likely to be caused by a change in custody.* Jan would have us adopt a variation of the substantial change requirement, a higher threshold than the "best interests" standard.

We decline to adopt Jan's three-part test and the higher standards. Our settled law is set out above. We prefer to remain with our present criteria; the best interest of the child test and rely on the trial courts to exercise discretion based on the evidence in the record.

* The first two prongs of this test come from *Millikin v. Millikin,* 115 Wis.2d 16, 339 N.W.2d

Clearly, from the record in this case, Jan was having problems in providing Nathan a stable home. She was having a strained marriage for several months that ended up in separation, then divorce. She was having substantial financial difficulty. She was facing criminal charges. Additionally, she left her children alone necessitating foster care. Although the dependency and neglect petition was dropped, a social worker testified that Jan failed to follow a case service plan, failed to keep appointments and failed to attend parenting classes. The social worker questioned Jan's ability to adequately supervise, control and provide for the needs of her children.

Because of his mother's personal problems, Nathan was feeling a lack of emotional support. As a result, he flunked several subjects in school and must repeat the fourth grade. A clinical psychologist testified that the next two years were critical in Nathan's development. In his opinion, Nathan needed "more consistent controls put on him in the next two or three years" and that Mark's home provides a more consistent system for Nathan to grow and develop than the system at his mom's house. Based on this record, the trial court did not abuse its discretion in holding that the best interests of the child require a change in custody from Jan to Mark.

Next, Jan argues that the trial court abused its discretion in separating Nathan from his half-brothers without finding compelling reasons. In *Mayer,* we adopted the universally recognized principle that "in the absence of compelling reasons to the contrary, the best interest of siblings require that they be raised together whenever possible." 397 N.W.2d at 642. When the trial court concludes that it is the child's best interest to separate siblings, it must make adequate findings of fact and conclusions of law regarding this crucial consequence of the custody arrangement. *Id.* at 644. *See also Jasper v. Jasper,* 351 N.W.2d 114 (S.D.1984).

573 (1983).

■ Mark concedes that the trial court's findings of fact do not recite compelling reasons for separating the siblings but that its memorandum opinion indicates that the trial court weighed this factor and the totality of the evidence presented compelling reasons to separate Nathan from his half-siblings. It is settled law that we do not review the trial court's memorandum opinion unless the same is expressly incorporated in the trial court's findings of fact and conclusions of law. SDCL 15–6–52(a); *see also Jones v. Jones,* 334 N.W.2d 492 (S.D. 1983); *Hitzel v. Clark,* 334 N.W.2d 37 (S.D. 1983); *Dykstra v. National Bank of South Dakota,* 328 N.W.2d 862 (S.D.1983); *Dale v. Board of Ed., Etc.,* 316 N.W.2d 108 (S.D.1982); *Connelly v. Sherwood,* 268 N.W.2d 140 (S.D.1978); *Christiansen v. Strand,* 82 S.D. 416, 147 N.W.2d 415 (1966). We do not find that to be the case here. The trial court's Conclusion of Law IV provided:

> The court has weighed the other factors in considering the best interests and welfare of the child, including the possible disruptive influence of resettling NATHAN at this time, his close relationship with his mother and the bonding that has occurred with his mother. The best interests and welfare of NATHAN will, nonetheless, be served by changing the custodial relationships now as the father appears better equipped to deal with NATHAN's problems.

■ Other than the above, the trial court made no finding on the issue of separating Nathan from his brothers. While the conclusion makes reference to the relationship and bonding between Nathan and his mother, it makes no mention of the siblings. If the trial court found that the totality of the evidence presented compelling reasons to separate these siblings, as Mark argues, then it must reduce that decision to adequate findings in support of its holding. Because the record is silent as to this issue, we remand to the trial court for proper findings of fact and conclusions of law.

For her third issue of error, Jan argues that the trial court abused its discretion by summarily disregarding Nathan's clearly expressed preference to remain in the custody of his mother. Jan concedes that a child's preference is not binding on the court. However, she argues that because the trial court's memorandum opinion and its findings of fact and conclusions of law never mention the expressed preference, or identify facts that outweigh Nathan's expressed preference, the trial court has abused its discretion and must be reversed.

We find Jan's argument unpersuasive. SDCL 30–27–19 provides, in pertinent part:

> In awarding the custody of a minor ... the court or judge is to be guided by the following considerations:
>
> (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of a sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question[.]

"This portion of the statute is obviously permissive rather than mandatory and the trial court must use its discretion in considering the child's preference." *Jasper,* 351 N.W.2d at 119. We find no abuse of discretion in this case. The trial court interviewed the child and observed the witnesses. It was in the position to determine whether the child's preference should influence its decision.

We now turn to Mark's notice of review issues. First, Mark contends that the trial court erred in awarding Jan $300 in attorney fees when she made no formal written motion for attorney fees and when she incurred no attorney fees by being represented by counsel employed by East River Legal Services (free legal services) and by not making specific findings as to how it arrived at the $300 amount.

At the August 21, 1987, hearing, Jan moved for attorney fees. Therefore, the issue was properly before the trial court and Mark's allegation that there was no formal motion is without merit. Mark's alternative argument is not that the trial court lacked authority to award attorney fees, but rather, that it may not award attorney fees to a party represented by a

free legal services agency. We find his argument unpersuasive.

The general rule is that attorney fees may not be taxed against a party unless specifically provided by statute. SDCL 15–17–7 empowers courts to award attorney fees in a divorce case, both before and after judgment, provided that such an award is warranted and necessary. *Senger v. Senger,* 308 N.W.2d 395 (S.D.1981). There is no exception in SDCL 15–17–7 that denies attorney fees where a party is represented by free legal services.

■ East River Legal Services represent Jan at federal taxpayer expense. While she is not obligated to pay attorney fees, she is obligated to turn over to East River Legal Services any fees which are awarded to her. When the trial court determines that an award of attorney fees is warranted and necessary, pursuant to SDCL 15–17–7, it does not matter that a nonprofit legal services corporation is paid for representing an indigent client.

The allowance of attorney fees rests in the discretion of the trial court and will be interfered with only if there appears to be error in exercise of that discretion. *Peshek v. Peshek,* 297 N.W.2d 323 (S.D.1980). In determining whether to award attorney fees, the trial court must consider factors such as the needs of the parent and minor children and the opposing party's ability to pay. *Id.*

■ Considering these factors, we conclude that the trial court did not abuse its discretion. The evidence shows that Jan's income was not adequate to support herself. Further, Mark is in a better position to pay. The amount of attorney fees awarded does not appear to be an abuse of discretion.

■ Secondly, Mark contends that the trial court erred in increasing child support and making such increase retroactive when Jan made no motion for an increase in support.

SDCL 25–7–7.3 provides:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

In this case, Jan filed no petition for modification. The trial court, *sua sponte* ordered an increase in child support. According to the express language of the statute, the trial court erred in retroactively modifying child support payments and that part of the decision must be reversed.

Lastly, Mark contends that the trial court erred in failing to award him "reasonable terms" when it granted Jan's motion for continuance and postponed the hearing scheduled for June 16, 1987. In essence, he argues that because he was ready to proceed with his evidence, the postponement placed an unnecessary financial strain on him; therefore, Jan should be assessed costs.

SDCL 15–17–25 provides:

When an application is made to a court or referee to postpone a trial the payment of costs occasioned by the postponement may be imposed in the discretion of the court or referee as a condition of granting the same.

Clearly, costs are imposed at the discretion of the trial court. Based upon the record in this case, the trial court did not abuse its discretion in denying terms.

We affirm in part, reverse in part, and remand.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Spiritually, I agree with this decision but not with all of the authorities upon which it relies. Therefore, I concur in result.

It is my opinion that this very able and experienced trial judge carefully considered

the "compelling reasons" thesis, for his memorandum opinion does express that he weighed *"the other factors* including the possible disruptive influence of resettling Nathan at this time...." (Emphasis added.) In Finding of Fact XXVIII, it does become apparent that the trial judge considered Nathan's half brothers, for the trial judge mentioned the testimony of Dr. Arbes, who testified that Nathan had a "closeness to his stepbrothers." It is best for precedent, and particularity in the ultimate holding, as the majority holds, that findings of fact and conclusions of law be entered with respect to the "compelling reasons" separating Nathan from his half brothers.