Darlene L. KAPPENMAN,
Plaintiff and Appellee,

v.

Larry J. KAPPENMAN, Defendant
and Appellant.

Nos. 18521, 18522.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1994.

Decided Oct. 26, 1994.

Rehearing Denied Dec. 2, 1994.

Richard A. Johnson of Strange, Farrell, Johnson & Casey, P.C., Sioux Falls, for appellee.

Doug Cummings, Sioux Falls, for appellant.

MOSES, Circuit Judge.

This appeal involves an order denying a motion for a change of custody of the minor children to Larry J. Kappenman (Larry) and awarding Darlene L. Kappenman's (Darlene) costs disbursements and attorney fees.

### FACTS

This case has previously been before us. *Kappenmann v. Kappenmann* [sic], 479 N.W.2d 520 (S.D.1992); and Kappenman v. Kappenman, # 18435, conference opinion filed 7/8/94.

Darlene commenced this divorce on May 31, 1989. The decree of divorce was entered on June 29, 1990. The decree of divorce gave the custody of the twins of the marriage, Todd and Brad, born November 13, 1980, and daughter Leslie, born November 24, 1983, to Darlene. Larry filed a motion to modify child custody on August 22, 1990, and on August 30, 1990, filed his notice of appeal as to all issues except the grounds for the divorce.

On September 4, 1990 the trial court issued a memorandum opinion delaying the August 22, 1990 motion, because the parties were continuing with mediation, the court was not willing to enter an order modifying the previous custody ruling at that time.

On March 8, 1991 the trial court issued another memorandum opinion indicating that it had no jurisdiction to modify or change custody without a remand from the South Dakota Supreme Court.

Larry appealed this memorandum opinion on May 1, 1991 and the Supreme Court dismissed the appeal on May 29, 1991.

On August 27, 1991 the trial court sustained Darlene's objection to Larry's motion to modify custody based on the court's lack of jurisdiction due to the pending appeal.

The Supreme Court issued its opinion on January 8, 1992. It affirmed the trial court's award of custody of the children to Darlene, affirmed the property settlement and awarded partial attorney fees.

On September 3, 1992, based on the August 22, 1990 motion to modify the custody of the minor children, the trial court issued a memorandum opinion finding that there was not a substantial and material change in circumstances in the case to change custody of the minor children.

On February 4, 1993 Larry made a motion to reconsider (or in the alternative, motions for a new trial) and to amend visitation.

On February 5, 1993 Larry made a motion for temporary custody of Leslie to be placed with him.

On February 11, 1993, the trial court entered findings of fact and conclusions of law finding there was no substantial and material change of circumstances, and it was in the best interests of the minor children to remain in Darlene's custody. Larry has not appealed from this.

On March 9, 1993, the trial court entered an order denying the motion to reconsider the February 4, 1993 motions and the motion for temporary custody of Leslie. As a part of this order a custody evaluation was ordered to be performed by Dr. John Sivesand.

He completed the custody evaluation by June 1993.

On June 29, 1993 Larry made a motion for modification of custody and a hearing was held on July 12, 1993. Darlene requested that a second hearing be set so that her attorney could cross-examine Dr. John Sivesand.

At the second hearing on July 20, 1993, Dr. Sivesand testified that the children's behavior was similar to behavior he had read about in previous reports; however, the frequency and severity of the behavior was a concern for him.

Dr. William Arbes, a psychologist, also testified. Dr. Arbes originally submitted a report prior to the trial court agreeing that Darlene should have custody of the children. He later submitted a report in September of 1990 indicating that he had changed his mind and that Larry should have custody. Dr. Arbes testified on July 20, 1993 that he was surprised at how much the children's behavior had changed. He described the situation as "chaotic and dangerous." It appears Dr. Arbes was Larry's witness.

During that hearing, Larry presented evidence that the boys had run away from home to the local fire station. Larry submitted evidence that the children were beyond Darlene's control. Darlene did not dispute this evidence.

On July 30, 1993, the trial court denied Larry's motion for change of custody. It filed findings of fact and conclusions of law on August 10, 1993 finding that Larry failed to meet his burden of proof regarding a substantial change of circumstances. The trial court found that the best interests of the children required them to maintain and improve their relationship with their mother.

Larry's motion for reconsideration of July 30 decision (SDCL 15–6–59(a)) denying his motion for a change of custody of the children was denied.

After the entry of the August 10, 1993 order denying the change of custody in this matter, Darlene applied for $3,357.00 in attorney fees pursuant to SDCL 15–6–54(d). Larry's counsel filed objections and a hearing

was set at the same time as the motion for reconsideration in this matter.

The trial court awarded Darlene $1,800.00 for her attorney fees, plus tax and costs of approximately $142.00.

## STANDARD OF REVIEW

The trial court's findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15-6-52(a).

■ A parent seeking modification of child custody has the burden of proving 1) that there has been a substantial and material change of circumstances since the decree of divorce was entered and 2) that the welfare and the best interests of the child require modification. *Jones v. Jones*, 423 N.W.2d 517 (S.D.1988). The mere fact that conditions have changed since the decree is not sufficient in itself to warrant modification. *Huckfeldt v. Huckfeldt*, 82 S.D. 344, 146 N.W.2d 57 (1966). Not every significant change justifies a transfer of custody. *Ludwig v. Burchill*, 481 N.W.2d 464 (N.D.1992). Either factor standing alone will not justify a change of custody—both must be present. This is a heavy burden, but the courts, the parties and especially the children must be protected from endless and vexatious litigation and the resulting uncertainty flowing therefrom. *Hanks v. Hanks*, 334 N.W.2d 856, 858 (S.D.1983).

■ The trial court has broad discretion in awarding custody of minor children and the trial court's decision will be reversed only upon showing of an abuse of discretion. *Anderson v. Anderson*, 472 N.W.2d 519 (S.D. 1991); *Kost v. Kost* 515 N.W.2d 209 (S.D. 1994); *Jones v. Jones*, 423 N.W.2d at 519. A judicial discretion is not an uncontrolled one, and its exercise must have a sound and substantive basis in testimony. *Aulner v. Aulner*, 296 N.W.2d 533 (S.D.1990).

■ An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Henle v. Larson*, 466 N.W.2d 846 (S.D.1991). The determinations are only reversed where we are convinced that the find-ings of the trial court are clearly erroneous and the record indicates that an abuse of discretion has occurred. *King v. King*, 477 P.2d 356 (Alaska 1970). The paramount consideration in deciding the issue of child custody is the best interests of the child. *Kost, supra.*

■ Both the credibility of the witnesses and weight to be accorded to their testimony is for the court to determine. *Mellema v. Mellema*, 407 N.W.2d 827, 831 (S.D.1987). The trial court's decision, based on its first hand opportunity to gauge the credibility and emotional stability of the parties, must be given the appropriate deference mandated under our scope of review.

■ In this case, we would be remiss if we did not state that we are greatly troubled by what appears to be the trial court closing the door to the evidence presented in the case before it. However, based on the evidence, the question as to whether custody of the children should be changed is closed and we are compelled to affirm the trial court.

■ After the July 30, 1993 hearing, the trial court entered an order providing as follows:

2. The Court shall reconsider the custody of the twin boys, Todd and Brad Kappenman on or about August 1, 1995, provided that the children continue to develop a relationship with their mother by learning sign language, treating their mother with respect, following the rules of their parents' respective households and conducting themselves as civilized young men.

The depth of frustration experienced by a judge in these circumstances is manifested by such an order. The order given by the judge is prospective in nature and does not take effect until August 1, 1995. It is premature for us to consider this order. We anticipate that the trial court will not forsake the criteria in reconsidering his custody order of only changing custody when there has been a substantial and material change of circumstances since entry of the August 10, 1993 order and when the welfare and the best interests of the children require such a

change. *See Jones v. Jones,* 423 N.W.2d 517 (S.D.1988).

The last issue is the appeal of the award of Darlene's attorney fees and costs in this matter.

### STANDARD OF REVIEW

■ SDCL 15–17–38 permits the award of attorney fees in divorce actions. As we stated in *Temple v. Temple,* 365 N.W.2d 561 (S.D.1985), each case rests upon its own facts and a decision is within the court's discretion. This Court can consider the totality of the circumstances in reviewing such an award. *Pribbenow v. Van Sambeek,* 418 N.W.2d 626, 630 (S.D.1988). The award rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985). "The term, 'abuse of discretion' refers to a discretion exercised to an end or purpose, not justified by, and clearly against, reason and evidence." *Hrachovec v. Kaarup,* 516 N.W.2d 309 (S.D. 1994) (quotation omitted); *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984).

The issue to be resolved on appeal is whether the trial court failed to consider Darlene's ability to pay her own attorney fees and costs and her financial status. The trial court ordered that Larry pay 100% of the attorney fees incurred by Darlene from June 28, 1993 to August 10, 1993.

In *Kappenmann v. Kappenmann,* 479 N.W.2d at 522, Darlene was awarded assets valued at $226,000.00 of which approximately $76,000.00 was in liquid assets. She receives $500.00 per month in alimony and $1,100.00 per month in child support. In addition, she receives over $500.00 per month in disability benefits for herself and the children from Social Security Administration. Also, she receives some farm rental income each year.

■ In determining whether to award attorney fees, a trial court must first consider what constitutes a reasonable fee. *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982). On review, this Court will examine the trial court's analysis of the following elements pertinent to fixing legal fees generally: (1) the amount and value of the property involved; (2) the intricacy and importance of litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; (8) whether briefs were required; and (9) whether an appeal to this court is involved. *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Holforty v. Holforty,* 272 N.W.2d 810 (S.D.1978). Each case must rest on its own facts and there is little to be gained by comparing the present fee with others which have been previously allowed. *Lien, supra.*

■ Larry makes no objection that the fee awarded was not a reasonable fee, and since he is not objecting to the reasonable fee, we accept that the fee is reasonable. Second, the court must decide what portion of the fee, if any, should be allowed as costs to be paid by the opposing party. In reaching this decision the court should consider the property owned by each party, their relative incomes, whether the property of the parties is in fixed or liquid assets, and whether the actions of either party unreasonably increased the time spent on the case. *Kier v. Kier,* 454 N.W.2d 544 (S.D.1990).

■ From reviewing the entire file, the trial court was aware of the assets of both parties and had reviewed the file which has resulted in appeals to this court. Furthermore, it is apparent that the trial court did consider the property owned by each party, and their relative incomes since it made findings of fact and conclusions of law concerning this issue.

Larry has cited no case where the trial court is prevented from awarding 100% of the attorney fees to a party.

We have reviewed the file and there is no question that Larry's income is far above that of Darlene. We have also considered that the parties' assets were both fixed and liquid.

Presumably, the awards of maintenance and child support are needed for those purposes and are not available for paying attorney fees, costs and disbursements. *In re Marriage of Dusing,* 654 S.W.2d 938 (Mo. App.1983). The disability payments from the

Social Security Administration are needed for Darlene's and the children's support and are not available for costs, disbursements and attorney fees. Furthermore, the alimony of $500.00 award for five years is not available for costs, disbursements or attorney fees since it would defeat the purpose for which it was given. The purpose of this rehabilitative alimony for Darlene for her hearing loss is to assist Darlene to achieve an ability to sustain herself and improve or refresh her job skills.

The only assets that Darlene has other than her child support, maintenance and alimony remaining for the costs and disbursements is income which if used for the purposes of costs, disbursements and attorney fees would undermine her support and financial stability. *See In the Matter of Marriage of Scott,* 72 Ill.App.3d 117, 27 Ill.Dec. 863, 389 N.E.2d 1271 (1979).

We affirm the trial court in allowing Darlene the sum of $2,140.65 for attorney fees, for sales tax and for costs and disbursements.

MILLER, C.J., and SABERS, J., concur in result.

WUEST, J., concurs in part and dissents in part.

HENDERSON, Retired Justice, dissents.

MOSES, Circuit Judge, for AMUNDSON, J., disqualified.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted, did not participate.

SABERS, Justice (concurring in result).

I concur in result on the basis that the defendant has not shown an abuse of discretion on the part of the trial court.

WUEST, Justice (concurring in part and dissenting in part).

I agree the trial court should be affirmed in its award of attorney fees to Darlene. However, I join the dissent of Justice Henderson on the custody issue.

HENDERSON, Retired Justice (dissenting).

We are not all equal in ability but we are equal in the eyes of God and, per the founders of this Republic, in Law. I cannot join the majority opinion because this father and his three children strongly desire to be with one another, the children are beyond the mother's control by her own admission, and it is in the best interests of the children that there be a change of custody. I respectfully dissent.

My Brothers on this Court forthrightly express their dismay that the trial court "appears" to be "closing the door to the evidence presented in the case before it." Notwithstanding, they "are compelled to affirm the trial court." Right observation. Wrong conclusion. In my opinion, this Court can say, as a matter of law, that the facts are other than that found by the trial court. *Hilde v. Flood,* 81 S.D. 25, 130 N.W.2d 100 (1964).

Clearly, under the evidence presented to the trial court, the trial court should be reversed. I so vote. One of the oldest scopes of review in this Court is as follows: Although the trial court exercises broad discretion in determining questions of custody, such discretion *must have a sound* and *substantial basis in the testimony. Olson v. Olson,* 438 N.W.2d 544 (S.D.1989). A trial court can be reversed if there is a clear abuse of discretion. *Andera v. Andera,* 277 N.W.2d 725 (S.D.1979). This Court should reverse if a decision is clearly against reason and evidence. *Straub v. Straub,* 381 N.W.2d 260 (S.D.1986); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). It exists in the case before us.

There exists a flawed trial court order dated August 10, 1993; said order, in itself, mandates reversal. In the Findings of Fact and Conclusions of Law of said date, the trial court addressed the future conduct of the twin boys, Todd and Brad. Trial court should have focused on the actual facts under consideration. It totally ignores the problems and conduct of the parties' daughter, Leslie. Trial court separated the children in its order, declaring in effect, that the boys were to modify their behavior in the future but remained silent about Leslie. Evidence

established that Leslie developed anger and resentment against her mother, could not sleep, did not wish to live with her mother, had a strong preference to live with her father, and her behavior was deteriorating. Experts recommended immediate therapy for Leslie. Trial court expresses in its order "the court shall reconsider a change in the custody of the twin boys, Todd and Brad Kappenman, on or about August 1, 1995, provided the children continue to develop a relationship with their mother by learning sign language, treating their mother with respect, following the rules of their parents' respective households and conducting themselves as civilized *young men.*" Leslie? She was not mentioned!

This Court should recognize that there was no evidence introduced relevant to splitting up the twin boys from their sister. Siblings should not be split unless there are compelling circumstances. *Mitzel v. Black Cloud–Walberg,* 511 N.W.2d 816 (S.D.1994); *Schmidt v. Schmidt,* 444 N.W.2d 367 (S.D. 1989); *Mayer v. Mayer,* 397 N.W.2d 638 (S.D.1986). True, all three children were to remain with the mother but the trial court ordered a reconsideration of the boys in a year, without mentioning the troubled Leslie.

In *Williams v. Williams,* 425 N.W.2d 390 (S.D.1988), this Court, in an enlightened viewpoint towards grasping the reality of that elusive phrase "the best interests of the children," held that custody evaluations, home studies, or investigations are necessary as an aid to make such a determination. In the appeal of this action in *Kappenmann v. Kappenmann,* 479 N.W.2d 520, 523 (S.D. 1992), this Court decided the trial court did not err, i.e., did not abuse its discretion because it based its decision, in part, upon two experts, one being Dr. Arbes. In the instant action, two experts testified, Dr. Sivesind and the same Dr. Arbes. From the inception of this case, Dr. Arbes has been deeply involved. These two experts' testimony, in this case, is disregarded.

Let us examine this evidence.
- Triggered by mother's complaints, CHIN complaints were filed against Brad and Todd. CHIN statutes in South Dakota pertain to a Child in Need

of Supervision, SDCL 26–8B–2. Mother reported that Todd ran away from home on three occasions between February 11, 1993 and July 30, 1993. Brad, according to her, instigated many problems. She vociferated to the authorities that she absolutely could not control these boys. Todd sought a "safe haven" at a fire station, per the signed affidavit of Don Hill, Captain, Sioux Falls Fire Department.

- Dr. Sivesind testified that although there was similar behavior, as exemplified by previous reports he had studied, he was now concerned with the safety of the family; the children's behavior was more severe and more frequent. He testified that the physical violence would get worse if the children remained in mother's custody.

- A report, filed with the trial court by Dr. Sivesind, declared that there was a danger of physical injury, not only to the children, but to the mother if all remained in the same household. Such a report reflects a serious, intensifying, and real problem which had developed after previous hearings herein. Evidence established a substantial change in circumstances which required a modification of custody unto father. *Olson v. Olson,* 438 N.W.2d 544 (S.D.1989); *Garnos v. Garnos,* 376 N.W.2d 571 (S.D. 1985).

- Amazingly, mother's counsel introduced pictures of writings on various bathroom fixtures reflecting messages of outrage and dismay written by the children; these messages were written on toilets and a mirror expressing their cry to the world, in general, that their life was intolerable and they wanted to live with their father. These exhibits were introduced to demonstrate that father had caused these children to do such acts. Such an allegation is subjective in nature; that they actually caused these writings are objective.

- Trial court fixed on the communication problem between children and mother. Hence, trial court's written order that the "young men" should learn sign lan-

guage. Dr. Sivesind testified he thoroughly reviewed (1) the opinions of the parties and (b) opinions of the children as to the merit/non-merit of mother's hearing impairment as an obstruction to her ability to parent the children; he testified there was no such problem. To buttress his opinion, mother testified that she did not believe her hearing impairment affected her ability to parent the children. She is bound by this testimony. *Werner v. Norwest Bank,* 499 N.W.2d 138 (S.D.1993). Notice the ratio decidendi of the trial court "... providing the children continue to develop a relationship with their mother by learning sign language ..." It appears that the trial court ignored this evidence concerning mother's deafness. Furthermore, the evidence established that mother did not become totally deaf until she was a full grown adult. In summary, (1) mother could communicate with the children and (2) there was absolutely no evidence to establish that if the boys learned sign language (assuming a communication problem), that the children's behavior would improve.

- Dr. Sivesind was mother's expert. She hired him. He opined that he was extremely concerned for the physical safety of the mother and the children, if the children remained in the custody of the mother. She should be bound by her own expert's testimony. Dr. Arbes testified the situation was "dangerous" to mother and the children.
- Dr. Sivesind's ultimate conclusion was that the children had a more positive emotional attachment to the father than the mother. He opined that the father was better able to foster autonomy and independence for the children and, in his custody, would be happier, healthy, and productive. Is it any wonder that this father appealed!

### CONCLUSION

Trial court ignored the opinions of experts; trial court repudiated the desires of the children; trial court ignored the CHINS petitions (children out of control of parent/mother); trial court ignored exhibits of pictures of children's cry to be removed; trial court ignored reports; trial court ignored danger to mother and children; trial court ignored all parties' testimony that there was no communication problem; trial court ignored a material and substantial change in circumstances, under the evidence of both parties; and lastly, trial court ignored the best interests of the children. Justice Roger Wollman, in his dissent in *Masek v. Masek,* 237 N.W.2d 432, 435 (S.D.1976), warned against the improper application of the substantial and material change in circumstances rule before a court could modify a custody order. His admonition was that such a requirement was a *judicially created rule of expediency,* rather than a *statutory requirement;* further, he concluded that such a rule "should not be allowed to create a mechanistic barrier to frustrate the performance of that [statutory] duty."

The late Chief Justice Earl Warren had a piercing inquiry at oral argument, "Is it fair?"

No, it wasn't fair to these children.